# CHARLESTON.

## KURNER *et al. v.* O'NEIL *et al.*

### Submitted June 7, 1894.—Decided November 24, 1894.

1. FRAUDULENT CONVEYANCES—PREFERENCES—CONFLICT OF STATUTES.

Clause of section 2, c. 74, of the Code, which is in these words, to wit:—"And every gift, sale, conveyance, assignment, transfer or charge made by an insolvent debtor to a trustee, assignee or otherwise giving or attempting to give a priority or preference to a creditor or creditors of such insolvent debtor, or which provides or attempts to provide for the payment in whole or in part of a creditor or creditors of such insolvent debtor to the exclusion or prejudice of other creditors, shall be void as to such priority, preference or payment so made or attempted to be made; and all such gifts, sales, conveyances, assignments, transfers and charges shall be deemed void as to such priority, preference or payment; and every such gift, sale, conveyance, assignment, transfer or charge shall be deemed, taken and held to be made for the benefit of all the creditors of such debtors, * * *"—does not avoid such gift, sale, conveyance, transfer or charge *in toto* but only defeats the preference and preserves such gift, sale, conveyance, assignment, transfer or charge intact for the benefit of all the creditors of the insolvent debtor.

2. SALE.

The sales of personal property, when situated at the place of the domicile of the vendor, are governed by the law *rei sitae*, not

by the laws of the state to which it may thereafter be removed.

3. Fraudulent Conveyances—Partners and Partnership.

A transfer of partnership property situated in this state by a member of an insolvent firm to a private creditor with full knowledge to satisfy an individual obligation is fraudulent and void as to the social creditors.

B. T. Bowers for plaintiff in error cited, Sto. Conf. L. § 242; 2 Pars. Cont. § 576; 20 Ohio 545; 1 Ohio St. 267; 3 Ohio St. 247; Code, c. 74, s. 2; 37 W. Va. 552.

White & Allen for defendants in error cited, 37 W. Va. 675; 26 Gratt. 927; Code, c. 74, s. 2; 25 W. Va. 185.

Dent, Judge:

The facts in this case are as follows, to wit: The firm O'Neil, Funk & Co., composed of W. B. O'Neil, Thomas Funk and Charles Engeman, were in a failing and insolvent condition, and attachments had been and were being sued out against them. W. B. O'Neil was indebted to C. Muhleman & Co. in the sum of three hundred dollars and forty two cents, for merchandise used by the firm of O'Neil, Funk & Co. This account was assigned to Charles Muhleman, who also had a large individual claim against the partners of the firm of O'Neil, Funk & Co. Charles Muhleman, knowing the failing circumstances of the last mentioned firm purchased from W. B. O'Neil for the express purpose of securing himself as a creditor as aforesaid on the 8th day of September, 1892, two car loads of slate amounting to six hundred and forty dollars and forty five cents, out of which he was to first pay the freight bills amounting respectively to seventy two dollars and eighty cents and eighty· seven dollars and ninety cents, and the balance was to be credited, first, on the mill-account as above of three hundred dollars and forty two cents, and then on the note of the partners, W. B. O'Neil, Thomas Funk, and Charles Engeman. On the 9th day of September, 1892, in the state of Ohio Charles Muhleman purchased from W. B. O'Neil one dark brown horse valued at sixty dollars; a road wagon at twenty-five; one set double harness including two collars two bridles and one pair

check-lines, twenty dollars—amounting to one hundred and five dollars, which was also to be credited on the note aforementioned. On the 10th day of September, 1892, George E. Kurner & Co., creditors of O'Neil, Funk & Co., sued out an attachment against said last-mentioned firm, and each of them in the Circuit Court of Ohio county, on the sole grounds that they were non-residents of the state of West Virginia; and on the 12th day of September this attachment was levied by the sheriff of Wetzel county at Baresville Station in said county on the slate, wagon, horse and harness aforesaid. Charles Muhleman immediately instituted proceedings by petition under section 23, c. 106, of the Code in said Circuit Court to test the validity of such levy and the title to the property involved. The issue was made up, and, a jury, being waived, the whole matter upon the pleadings and evidence was submitted to the court; and on the 4th day of October, 1892, the Circuit Court entered an order adverse to the claim of the petitioner, Charles Muhleman, and dismissed his petition at his costs. From this order he has appealed to this Court.

The question now presented is: Which has the superior right to the property in controversy, Charles Muhleman, the purchaser, or George E. Kurner & Co., the attaching creditor? The evidence in this case does not substantiate the claim of counsel, that the sale was made to Charles Muhleman to delay, hinder and defraud creditors, but it seems to have been a *bona fide* attempt on the part of a debtor in failing circumstances to prefer a favorite creditor to others, as he would have had a perfect right to do prior to the passage of section 2, c. 74, of the Code, as amended and re-enacted in the Acts of 1891; and it is therefore the provisions of that section which must be construed in determining this controversy, especially the following clause, to wit:

"And every gift, sale, conveyance, assignment, transfer or charge made by an insolvent debtor to a trustee, assignee or otherwise giving or attempting to give a priority or preference to a creditor or creditors of such insolvent debtor, or which provides or attempts to provide for the payment in whole or in part of a creditor or creditors of

such insolvent debtor to the exclusion or prejudice of other creditors' shall be void as to such priority, preference or payment so made or attempted to be made; and all such gifts, sales, conveyances, assignments, transfers and charges shall be deemed void as to such priority, prefer- ence or payment; and every such gift, sale, conveyance, assignment, transfer or charge shall be deemed, taken and held to be made for the benefit of all the creditors of such debtor except as hereinafter provided; and all the estate, property and assets given, sold, conveyed, assigned, trans- ferred or charged as aforesaid shall be applied upon the debts and paid to the creditors of such insolvent debtor *pro rata*. ＊　＊　＊ "

In the case of *Wolf* v. *McGugin*, 37 W. Va. 552 (16 S. E. Rep. 797) Judge BRANNON, in construing this section, says: "We must note that the statute does not expressly avoid the act of transfer, but it does avoid the preference. Now, if the transfer were by deed of trust to a trus- tee for the preferred creditors, or if it were direct to a creditor, equity would seize upon the property, and ap- propriate by sale to all the creditors; but where, in this case, the sale is to an absolute purchaser, with a provision that he devote the purchase-money to preferred creditors, we ought to regard the transfer valid to pass title, and hold only the purchase-money liable to all creditors. The stat- ute does say that all the property sold shall be applied up- on all the debts *pro rata*, but a preceding clause declares the sale void as to the preference, and not wholly void, which is the vital feature of the enactment."

It is very plain from the reading of this statute, that it was not the intention of the lawmakers to render a *bona fide* sale for valuable consideration to a good and solvent pur- chaser, creditor or not, void, but only to defeat the preference, and secure the division of the proceeds *pro rata* among all the creditors. In the language of the statute: "Every such gift, sales, conveyance, transfer or charge shall be deemed, taken and held to be made for the benefit of all the creditors of such debtor." The statute, instead of avoid- ing preserves the sale, and equity will hold the purchaser to be, whether a creditor or not, responsible as a trustee

for the benefit of all the creditors to the full extent of the value of the property. In case of the insolvency of the purchaser, equity will seize the property; otherwise, it will only require the payment of an adequate price therefor, as it is not the property itself, but the proceeds that must be divided *pro rata* among the creditors.

If there was no other legal proposition involved in this case, we would be compelled to hold that, the sale not being avoided by the statute but preserved good and valid for the benefit of all the creditors, the property in controversy from the time of the transfer ceased to be the property of W. B. O'Neil and therefore was not subject to the levy of the attachment in this case; but Charles Muhleman being a solvent purchaser and creditor would be entitled to hold this property in trust for the benefit of all the creditors of W. B. O'Neil. This would only apply as to the horse, wagon and harness, the individual property of said O'Neil.

There is another reason why the horse, wagon, and harness are not subject to the levy of the attachment. The transfer of them was made in Ohio, where the property was situated; and it is a good and valid transfer under the laws of that state. It was also the domicile of the vendor. It is not the *lex loci contractus* that governs in such cases, but the *lex rei situae;* that is, the law of the place where the property is located at the time of the sale. Any other rule would lead to endless confusion, and all sales of property made outside of this state would be subject to review as soon as the property was brought, however remotely, within the jurisdiction of our courts.

In Story on Conflict of Laws (pages 462 and 463) we find the doctrine stated thus: "The proper forum to decide upon all questions of the priorities and preferences of creditors is the place of the domicile of the debtor; and that the law of that place, and not the law of the place of the contract, is to govern in all cases of such priorities and preferences in respect to movables situated in his place of domicile. But as to movables situated elsewhere, as well as to immovables, the law *rei sitae* is to govern."

In this case the domicile, the *rei sitae* and the place of the contract all concur, being in the state of Ohio; and now, because the property involved is temporarily found and seized in this state, the counsel insist that by reason of our statute a lawful sale made in the state of Ohio at the domicile of the parties, and where the property was at the time, should be treated as null and void. The property, before it was brought into this state by a lawful and *bona fide* transfer under the laws of Ohio, became the property of Charles Muhleman, and W. B. O'Neil had no leviable interest therein, and the attaching creditors have acquired no right to subject the same to the lien of their attachment. *Born* v. *Shaw*, 29 Pa. St. 288. *Guillander* v. *Howell*, 35 N. Y. 657.

As to the two cars of slate, the property of O'Neil, Funk & Co. at the time of the transfer to Charles Muhleman, a different principle must be applied. The indebtedness, or at least the greater part of the indebtedness, it was transferred to secure, although the partnership apparently received the benefit of it, was the individual indebtedness of W. B. O'Neil. Such a transfer made by a partner of the partnership assets with notice to the transferee is a fraud on the partnership, and is therefore void, and if the partnership is insolvent at the time, is fraudulent, null, and void as to the social creditors. *Darby* v. *Gilligan*, 33 W. Va. 246 (10 S. E. Rep. 400); *Baer* v. *Wilkinson*, 35 W. Va. 422 (14 S. E. Rep. 1).

In Story on Partnership (section 132) the law is stated as follows to wit: "Similar principles will apply, although not always to the same extent or with the same certainty, where one partner misapplies the funds or securities or other effects of the partnership in discharge or payment of his own private debts, claims, or contracts. In such cases the creditor dealing with the partner, and knowing the circumstances, will be deemed to act *mala fides* and in fraud of the partnership, and the transaction by which the funds, securities, and other effects of the partnership have been so obtained will be treated as a nullity."

Hence this property, notwithstanding its transfer to Charles Muhleman by W. B. O'Neil, in legal effect remain-

ed the property of O'Neil, Fank & Co. and as such was liable to attachment by any of the firm-creditors on any ground good against the firm collectively. The sole ground of the attachment is the non-residency of the defendants. The attaching creditors are therefore entitled to priority except as against the carrier's lien for the freight bills; and the provisions of section 2, c. 74 of the Code heretofore commented on are not applicable, as the sale of the slate must be treated as a nullity and absolutely void and not held good for the benefit of all the creditors.

For the foregoing reasons the judgment of the Circuit Court is reversed, and judgment entered in favor of Charles Muhleman for the horse, wagon and harness, the property transferred to him by W. B. O'Neil in the State of Ohio, and as to the two car loads of slate his claim is disallowed, and his petition to that extent dismissed. And the attaching creditors, George E. Kurner & Co., must pay the petitioner his costs here and in the Circuit Court expended.