# CHARLESTON.

MACK *et al.* v. PRINCE *et al.*

Submitted January 16, 1895—Decided March 30, 1895.

JUDGMENT BY CONFESSION—ASSIGNMENT—INSOLVENT DEBTOR.

A judgment confessed by an insolvent debtor, together with the execution issued thereon, is, in effect, an assignment of the debtor's property to the extent of the lien or levy of such execution, is void as a preference under section two of chapter seventy four of the Code, and inures to the benefit of all the insolvent's creditors.

COUCH, FLOURNOY & PRICE for appellant, cited 37 W. Va. 562; Code, 1891, c. 74, s. 2; Id. c. 125, s. 43; Id. c. 141, s. 2; Id., c. 140, s. 5; Id., c. 74, s. 1; 22 W. Va. 357-365; 2 Dutcher 148; 42 Miss. 1; Dwarris on Statutes p. 695; 1 Bouv. Law Dict.

222; 1 Rop. Leg. 446; 4 Vin. Ab. 449; 1 Supp. Vesey Jr. 309; 2 Id. 31; 1 Veni 45, 411; 4 East Rep. 501; 4 Ves. 815.

SIMMS & ENSLOW for appellees, cited 37 W. Va. 552; 50 N. W. Rep. 1030; 21 Wall. 500; 102 U. S. 263; 11 S. E. Rep. 337; 129 U. S. 330; 27 N. E. Rep. 1065; 10 Id. 903.

DENT, JUDGE:

The facts are as follows to wit: On the 17th day of June, 1893, the defendant D. H. Nugen, in the clerk's office of the Circuit Court of Cabell county confessed a judgment in favor of P. H. Noyes & Co. for the sum of three hundred and ninety seven dollars and thirty four cents, on which execution was forthwith issued, and placed in the hands of the sheriff of said county, and was levied on a certain stock of store goods belonging to said Nugen. Before said execution, said Nugen made a sale of said goods to the defendant Walter Wilson at the price of one thousand two hundred dollars, to be paid on a debt due himself, and said judgment of P. H. Noyes & Co., and a debt due Mack, Stadler & Co.

Several parties then sued out attachments and levied on said goods; among them Prince, Dunn & Co. and Sehon, Blake & Co., who join in this appeal but have made no assignment of error. Mack, Stadler & Co. then filed their bill in chancery, convening all the parties in interest, and praying that the sale to Wilson be held a general assignment for the benefit of all the creditors of said Nugen, and the proceeds be distributed accordingly. An answer was filed by P. H. Noyes & Co., claiming the right to have their judgment and execution paid in full; also by the attachment creditors, claiming the benefit of their attachment liens. The cause was referred to a commissioner, and on the coming in of his report the various defendants excepted thereto. On the 13th day of December, 1893, the court entered a decree overruling the exceptions to the commissioner's report, confirming the same, and distributing the net proceeds of the property among all the creditors *pro rata;* from which decree P. H. Noyes & Co. appeal, and assigning the following errors: *First,* overruling petitioner's exceptions to the

commissioner's report; *second*, setting aside and annulling petitioner's judgment, and the execution thereon, and refusing to give it priority of payment out of the funds derived from the sale of said goods; *third*, distributing said funds *pro rata* among all the creditors of said D. H. Nugen.

Exceptions to report are as follows: "P. H. Noyes & Co., except to within report (1) because the commissioner fails to report their writ of *fieri facias* against D. H. Nugen as a first lien on the stock of goods of D. H. Nugen; (2) because the commissioner reports the judgment in their favor against D. H. Nugen as void; and for other reasons apparent on the face of the report."

The only question raised by these exceptions and presented for the consideration of the court is whether the language used in section 2, chapter 74, of the Code, includes within its meaning, according to legislative intent, a confession of judgment and execution thereon. In other words, whether the statute is rendered abortive by the failure to embrace confessed judgments therein; for, if such be the case, all an insolvent debtor will have to do to entirely evade the provisions of the statute is to go into the circuit court clerk's office, and confess judgments to his favored creditors, according to the priority on which he wants them paid; thus defeating the very object of the law, and accomplishing as complete a preference among his creditors as if made by sale, assignment, or transfer, and just as expeditiously. The word "charge" has a specific technical and also a broad legal meaning, under which it includes any lien on property of any description. In construing a word susceptible of two meanings, the court will give it such construction as will render the law effective and not nugatory. 3 Am. & Eng. Enc. Law 118, note 3; 23 Am. & Eng. Enc. Law 319, 362, 364; 1 Cooley Bl. 59, 61, note 21. The section under consideration provides that "every gift, sale, conveyance, assignment, transfer or charge, made by an insolvent debtor to a trustee, assignee or otherwise, giving or attempting to give a priority or preference to a creditor or creditors of such insolvent debtor, or which provides or attempts to provide for the payment in whole or in part, of a creditor or creditors of

such insolvent debtor, to the exclusion or prejudice of other creditors, shall be void as to such priority, preference or payment so made; and all such gifts, sales, conveyances, assignments, transfers and charges, shall be deemed void as to such priority, preference or payment; and every such gift, sale, conveyance, assignment, transfer or charge shall be deemed, taken and held to be made for the benefit of all the creditors of such debtor except as heretofore provided; and all the estate, property and assets, given, sold, conveyed, assigned, transferrd or charged as aforesaid, shall be applied upon the debts and paid to the creditors of such insolvent debtor *pro rata;* provided that nothing in this section shall be taken or construed to change, impair or affect any prior lien, priority or encumbrance acquired by a creditor on the real estate of such debtor in any manner now prescribed by law," *etc.* The plain intention of this enactment was to prevent preferences among the creditors of an insolvent debtor, and secure a *pro rata* distribution of his assets. The gist of the whole matter is whether the debtor, recognizing his insolvency, is aiding, abetting, or colluding with the creditor to secure to him payment of his debt in priority or preference of his other creditors; and any way in which this could be accomplished is included within the intent of the statute; and, if the language used can be construed so as to cover this intent, it is the duty of the court so to construe it.

The appellants are here claiming the benefit of a preference forbidden by the statute, and the reason urged in support of their claim is that they have discovered an oversight of the legislature, which has enabled them to evade its enactment, provided they can convince the court that it is contrary or derogatory to the common-law, and should be strictly construed. While this may be true, yet the statute should not be abrogated or annulled or rendered absurd. Equality is equity, and the legislature was seeking to produce equality among the creditors of an insolvent debtor, and put it beyond his power, if possible, to turn his assets over to preferred creditors, when the rights of all his creditors should be regarded as equal, and each entitled to an equal share in assets insufficient in amount to satisfy all in

full. The debtor has a peculiar knowledge of his own insolvency, and it is not equitably right that he should be permitted to use this knowledge in such way as to advance the interest of some to the detriment and loss of other creditors; and the law, to prevent this injustice, deprives the creditor of any advantage gained by him through the connivance of the debtor, and places all creditors on an equal footing as to such advantage. And yet it does not prevent a creditor acting entirely independent of the debtor from gaining any possible preference or priority of payment against any estate, real or personal, of the debtor, in any manner prescribed by law; but it is the debtor's hands and conscience it seeks to bind according to the rules of common honesty and fair dealing among men, and therefore, when he seeks to give an undue preference to one of his creditors, the law holds it to inure to the benefit of all indiscriminately. The good intent of the debtor, which must be deduced from the circumstances surrounding the transaction, is involved; and if it reasonably appear from the transaction that he was not endeavoring to give the creditor an undue priority or preference over others, but was simply securing a just debt, then the statute would not destroy the security. The language used is, "giving or attempting to give," or "provides or attempts to provide," "to the exclusion or prejudice of other creditors." If he is not insolvent the law does not apply; but, if he is insolvent, he must treat all alike.

In this case personal property is alone affected and it is unnecessary to discuss the effect of a judgment lien as to real estate, and it would be improper to review the decision in the case of *Refining Co.* v. *Quinn*, 39 W. Va. 535 (20 S. E. Rep. 576) the same questions of law not being presented. While the provisions of the section are derogatory to the common-law, they are remedial in their nature, and therefore should be liberally, and not strictly, construed, "so as to prevent the mischiefs at which it is aimed." *White* v. *Cotzhausen*, 129 U. S. 329 (9. Sup. Ct. 309); *Hudler* v. *Golden*, 36 N. Y. 446; *Hart* v. *Cleis*, 8 Johns. 41.

In the case of *Richardson* v. *Thurber*, 104 N. Y. 610 (11 N.

E. Rep. 133) it is said: "The word 'assignment' may sometimes have reference to the instrument which affects the transfer, and sometimes, to the transfer itself, considered as a legal effect or result;" and "in such cases the context or the apparent meaning determines the sense in which the word is used." And the same may be said of the words "transfer" or "charge." In the section under consideration it is the "legal effect or result," rather than the instrument, which the legislature had in contemplation in using the words "assignment," "transfer," or "charge," and it intended to cover thereby and include therein any transaction, of whatever kind or character, which an insolvent debtor might use or attempt to use to secure an) appropriation of his property, or a part thereof, for the benefit of one creditor, to the exclusion or prejudice of his other creditors. The judgment confessed and execution issued and levied operated in effect as an assignment and transfer of the debtor's property to the extent of the levy as completely, to all intents and purposes, as any other mode of assignment or transfer could have done.

In the case of *White* v. *Cotzhausen*, 129 U. S. 342 (9 Sup. Ct. 309) Justice Harlan says: "We only mean by what has been said that when an insolvent debtor recognizes the fact that he can no longer go on in business, and determines to yield the dominion of his entire estate, and in execution of that purpose, or with intent to evade the statute, transfers all, or substantially all, his property to a part of his creditors, in order to provide for them in preference to other creditors, the instrument or instruments by which such transfers are made and that result is reached, whatever the form, will be held to operate as an assignment, the benefit of which may be claimed by any creditor not so preferred who will take appropriate steps in a court of equity to enforce the equality contemplated by the statute." And on page 344, 129 U. S., and page 309, 9 Sup. Ct., he quotes approvingly from the opinion of Judge Treat in *Freund* v. *Yaegerman*, 26 Fed. 812, 814, as follows: "You may call it a mortgage, or you may make a confession of judgment, or use any other contrivance, by whatever name known; if the pur-

pose is to dispose of an insolvent debtor's estate, whereby a preference is to be effected, it is in violation of the statute." And he continues on the same page (344, 129 U. S., and page 309, 9 Sup. Ct.): "Surely the mere name of the particular instruments by which the illegal result is reached ought not to be permitted to stand in the way of giving the relief contemplated in the statute. Courts of equity are not to be misled by mere devices, nor baffled by mere forms." *Berger* v. *Varelmann*, 127 N. Y. 281 (27 N E. Rep. 1065); *Preston* v. *Spaulding*, 120 Ill. 208 (10 N. E. Rep. 903); *Miners' National Bank's Appeal*, 57 Pa. St. 193; *Winner* v. *Hoyt*, 66 Wis. 227 (28 N. W. Rep. 380); *Wilks* v. *Walker*, 22 S. C. 108, 111; *Wright* v. *Fergus Falls Nat. Bank* (Minn.) 50 N. W. Rep. 1030.

The conclusion, therefore, is that the judgment confessed, together with the execution and levy, was, in effect, an assignment, made by the debtor, giving or attempting to give a priority or preference to a creditor, to the exclusion or prejudice of other creditors, and therefore, to the extent of the property levied on, was void, and operated as an assignment of such property for the benefit of all the creditors of the debtor.

The judgment, however, was not void *in toto*, but remained good as between the debtor and the creditor, and the effect of the decree complained of is to so hold. The court referred the case to the commissioner to ascertain whether or not the said judgment was and is void under the statute in such case made and provided. The commissioner reported that it was so void. And the court, in confirming said report, decreed that the said confessed judgment, and execution issued thereon be set aside, annulled, and held to be of no effect, so far as the same gave or attempted to give a preference to the creditor; thereby simply annulling the preference as to the property in controversy, and leaving the judgment and execution in full force and effect in all other respects—that is to say, to the extent they operated as an assignment contrary to law, they were void, otherwise not.

The attaching creditors who join in this appeal do not

assign errors, nor have they filed briefs, and it is apparent they have abandoned their pretensions that the sale from the debtor, Nugen, to defendant Wilson was absolutely void, as having been made with intent to delay, hinder and defraud creditors; for it is plain that it was a mere attempt on the part of the debtor to prefer favorite creditors, which he would have had the right to do prior to the enactment of section 2, chapter 74, of the Code, and that by virtue of the provisions of this section it inured to the benefit of all the creditors. But the confessed judgment and execution operated as a general assignment for the benefit of all the creditors, prior to the sale to defendant Wilson, as to all the property on which said execution was a lien or levied, and hence the subsequent sale could not affect the status of the property.

The partial conduct of the insolvent debtor in attempting in violation of the law to secure a preference to any one of his creditors amounts to such a fraud as to deprive him of further control of the property involved, and, there being no other administrative tribunal provided, at the instance of any interested party a court of equity will assume the re-responsibility.

No error appearing in the decree prejudicial to the appellants, it is affirmed.