# CHARLESTON.

## JOHNSON *v.* RILEY *et al.*

Submited June 10, 1895—Decided Nov. 20, 1895.

1. FRAUDULENT CONVEYANCE—SATISFACTION OF PRIOR LIEN.
    Where property is incumbered to its full value by reason of prior liens thereon, an insolvent debtor may convey it in satisfaction of such prior liens, without rendering it subject to the provisions of section 2, chapter 74, of the Code; for such conveyance is not to the exclusion or prejudice of other creditors, but only amounts to the surrender of a valueless equity of redemption.

2. EQUITY OF REDEMPTION—LIEN.
    In the absence of fraud, a simple contract creditor can not subject an equity of redemption to sale until he has acquired a lien thereon in some manner provided by law.

JOHN BASSEL and H. W. HARMER for appellant.

M. M. THOMPSON for appellee, cited 23 W. Va. 639; 6 Pet. 302; 23 How. 477; 1 Greenl. Ev. § 79; 1 Starkie, Ev. 538; 2 Am. and Eng. Ency. Law, 651; 17 S. E. Rep. 184; 16 S. E. Rep. 797.

DENT, JUDGE:

In the Circuit Court of Harrison county, April rules, 1894, John C. Johnson, the appellee here, filed his bill against C. C. Riley, E. Esta Riley, and Patrick Flaherty, the appellant, setting up an indebtedness to him of C. C. Riley, amounting to the sum of four hundred dollars, with interest, and charging that said Riley, being insolvent, and for the purpose of hindering, delaying, and defrauding him, had by his deed bearing date the 3d day of February, 1894, conveyed or attempted to convey, with fraudulent intent, a certain house and lot situated in the town of Bridgeport, said county, to said Flaherty; and he prays that said Flaherty be required to answer said charges under oath, and that said deed be set aside and annulled, and said property be sold, and the proceeds thereof applied to the satisfaction of his debt. The bill is sworn to, and a *lis pendens* was filed, but no attachment was sued out. Riley and wife were non-residents, and an order of publication was taken against them, and duly executed. The defendant Flaherty appeared, and filed his answer under oath, as required, denying all fraud or knowledge of fraud, but admitting that he had purchased the property in good faith, the consideration being the payment and satisfaction of two deeds of trust held against said property—one in favor of the B. & O. Relief Association, calling for a balance of forty dollars and ninety cents; and the other in his own favor, and calling for four hundred dollars, with interest. The consideration fixed in the deed from Riley was the nominal sum of five hundred and fifty dollars. He files with his answer, and as a part of it, a letter from Riley, telling him of his inability to pay off these trust liens, and insisting that said Flaherty, instead of putting him to the costs of a chancery suit, should himself buy the property, and pay off the liens, with the understanding that, if he (Riley) should be able to make the arrangements within a limited period, he should have the privilege of redeeming the property at the price paid by Flaherty. In a postscript to this letter he adds: "Now, Pat, I do this not to force you to take the property, but so I can pay you. You know that most people do not care how much trouble they put

people to, but I want to pay you without any trouble or cost. Your friend C. C. Riley." To this answer the plaintiff replied generally. And without any proof as to the allegations of fraud, the case was submitted on bill, answer, general replication, bill taken for confessed on order of publication against the non-resident defendants. On consideration whereof the court entered the following decree: "It is ajudged, ordered, and decreed that the deed dated the 3d day of February, 894 [meaning 1894] made by defendants C. C. Riley and E. Esta Riley to defendant Patrick Flaherty, for a certain land, containing about one half an acre, situate in Bridgeport, in Harrison county, West Virginia, be, and the same is hereby, annulled and set aside as to the plaintiff's demand in this proceeding, as it is an attempt by C. C. Riley, an insolvent debtor, to provide for the payment of a debt to the defendant Patrick Flaherty, to the exclusion and prejudice of the plaintiff, and is therefore void as to such preference and payment. And the court doth further ascertain, adjudge, order, and decree the debt of Patrick Flaherty to be five hundred and ninety nine dollars and sixty three cents, with interest thereon from the 12th day of February, 1894, and the debt of John C. Johnson, the plaintiff, to be four hundred and ten dollars, of which three hundred and ten dollars is now due, with interest from the 25th day of September, 1894; and one hundred dollars, the residue thereof, will become due and payable on the 23d day of November, 1894, and bear interest thereafter, which said debts of said Flaherty and John C. Johnson are of equal dignity and charges upon the said land of said C. C. Riley, and entitled to be paid *pro rata* out of the proceeds of the sale thereof." The decree then provides for a sale of the property by a commissioner of the court, unless the plaintiff's debt be paid in full.

From this decree defendant Flaherty appeals, and assigns the following errors: *First.* There was no proof to sustain the allegation of the bill that the conveyance to petitioner was fraudulent as against other creditors of said Riley, nor is there any proof in the record that said Riley was insolvent at the date of such conveyance. *Second.* Had it been

proven that said Riley was insolvent, and that the conveyance to petitioner was an attempt on the part of said Riley to prefer petitioner, petitioner was clearly entitled to be reinstated to his rights under the deed of trust of May 24, 1887, and the court could not or should not have placed petitioner upon the footing of a simple contract creditor as the plaintiff Johnson was; and, if there was any attempt on the part of Riley to give a preference, it would have been only to the extent of the value of the lot in excess of the deed of trust of petitioner and the balance due upon the deed of trust to the relief association, as the two deeds of trust were not assailed, nor their validity questioned by the bill, or by any evidence in the cause, and the court, by its decree, recognized the validity of petitioner's deed of trust. *Third.* The decree took the plaintiff's bill for confessed against the two non-resident defendants, C. C. Riley and his wife. *Fourth.* The defendant E. Esta Riley was not a proper party to the suit. *Fifth.* For other errors appearing upon the face of the record.

Taking these assignments out of their order, it is proper to say as to the third and fourth that E. Esta Riley, wife of C. C. Riley, was not a necessary party, and that it was improper to take the bill for confessed as to persons not personally served with process. But these errors are such as will not be permitted to prejudice the defence of the defendant Flaherty, and therefore he can not complain of them.

Under the fifth assignment of error, it seems proper to call attention of the circuit court to a palpable error committed by it, admitting its theory of the case to be correct, sufficient to cause a reversal. The court sets aside and annuls the deed, not alone as to the preference given, but in *toto*, directly contrary to the decision of this court in the case of *Kurner* v. *O'Neil*, 39 W. Va. 515 (20 S. E. 589) following the case of *Wolf* v. *McGugin*, 37 W. Va. 552 (16 S. E. 797.) There is no pretense in this case that the consideration paid was inadequate, or that the purchaser was insolvent. On the contrary, his *pro rata* interest in the property rendered him perfectly solvent. Therefore the circuit court should not have annulled the sale even on its own theory of the case, but should have held it good, ascertained the

*pro rata* share of the plaintiff in the consideration agreed to be paid or paid by Flaherty, rendered a decree against him for the amount, and then, in case of his failure to pay directed a sale of the property. Instead of thus decreeing, it directs the sale of the property, not in case of failure to pay the *pro rata* share that Johnson would be entitled to, but in case of failure to pay Johnson's whole debt, which is almost equal in amount to the full value of the property. This is manifest error as against this appellant; but it is not the sole error in this record.

Before passing on the merits, there are some preliminary questions raised by plaintiff's counsel to be disposed of. It is claimed in the bill and argument that the deed from Riley to Flaherty was not legally recorded, on account of a variance between the date of the deed and the date set out in the certificate, and that the deed is invalid to pass any title, because the name of the grantee is omitted in the granting clause. If this be true, then has the plaintiff no standing in a court of equity, for he has not acquired a lien on the property in any manner provided by law. A mere *lis pendens* does not create a lien; and a legally invalid instrument does not give a simple contract creditor standing in a court of equity. He is in this court on the allegation of fraud, but, not satisfied with that, he goes further, and alleges that the very instrument he is seeking to set aside for fraud is no legal instrument at all. Why, then, seek to set it aside? If it is ineffectual to legally convey any interest to the defendant Flaherty, why ask a court of equity to do a vain and unnecessary thing. If, however, it is the object of the plaintiff to have the court correct the clerical mistakes made by the scrivener, and render the deed valid, before proceeding to pronounce it void for fraud, he is entitled to be entertained. The object of the recording acts is to protect innocent purchasers and creditors holding liens prior or subsequent against the property involved. The failure to record does not give a simple contract creditor lien on the property in a court of equity. It is a well settled rule of equity that every allegation of the bill not controverted by an answer must be taken as true. The insolvency of Riley, having been alleged in the

bill, and not controverted by Flaherty in his answer, must be taken as true as to him. Code, c. 125, section 36. It is also settled that when the plaintiff requires the defendant to file his answer under oath, the answer will be taken as true, unless contradicted by competent evidence. The answer of Flaherty is not contradicted in any manner, and for the purpose of this suit, being under oath, must be taken as true. 2 Tuck. Bl. Comm. 493; 6 Am. & Eng. Enc. Law, 800. Such being the state of the pleadings and proofs, the plaintiff wholly failed to make out his case. By his appeal to the defendant's conscience, he attributed to him credibility, and made a witness of him; and, though he does not prove the payment of the nominal consideration of five hundred and fifty dollars, yet he shows that the real consideration was the satisfaction of the two deeds of trust, which the decree shows amounted to five hundred and ninety nine dollars and sixty three cents, being in excess of the nominal consideration.

The circuit court appears to have considered the case for the defendant Flaherty on the question of fraud, but proceeded, under the prayer for general relief—properly or improperly, it is not necessary to decide—to hold that the deed from Riley to Flaherty was an attempt on the part of an insolvent debtor to give an illegal preference to one of his creditors, to the prejudice of others, in contravention of section 2, chapter 74, of the Code. Besides the cases heretofore referred to, this section has been construed to some extent in the case of *Mack* v. *Prince*, 40 W. Va. 324 (21 S. E. 1013). It is there said: "The good intent of the debtor, which must be deduced from the circumstances surrounding the transaction, is involved; and if it reasonably appear from the transaction that he was not endeavoring to give the creditor an undue priority or preference over others, but was simply securing a just debt, then the statute would not destroy the security. The language used is 'giving or attempting to give,' or 'provides or attempts to provide,' 'to the exclusion or prejudice of other creditors.' If he is not insolvent, the law does not apply; but, if he is insolvent, he must treat all alike."

In a case like this the good intent of the insolvent is in-

volved. It is insolvency that limits his dominion over his property. But, notwithstanding his insolvency, there are three ways in which he may dispose of his property without infringing the statute: First, to a *bona fide* innocent purchaser for value; second, to secure all his creditors *pro rata;* third, to satisfy specific liens on the property involved. If his intention is bad, and is concurred in by the purchaser, and he is only using the specific liens as a cover to enable him to escape the pursuit of his creditors, his deed would be void, especially if the property conveyed exceeded in amount the specific liens thereon. But where the property is incumbered to its full value, and the debtor has a mere equity of redemption therein, there is no good reason why the debtor, to escape further costs and interest, should not legally convey his valueless equity of redemption to some person willing to pay off the incumbrances; or who already holds such incumbrances; for in doing so he is not giving or attempting to give a priority or preference to a creditor, nor providing or attempting to provide for the payment in whole or in part of a creditor or creditors, to the exclusion or prejudice of other creditors. He does nothing to the exclusion or prejudice of his other creditors. They are already excluded, by reason of the property being incumbered to its full value, and they can not be prejudiced by a mere formal conveyance of a valueless equity of redemption. All that could pass by Riley's deed was the equity of redemption, for, as plaintiff's counsel asserts, the legal title was in the trustee, for the benefit of the *cestui que trust.* The deed would widen into a conveyance of the legal title only when the trusts were released or extinguished, not by the act of Riley, but by the act of his grantee. But in this case Riley did not even part with the equity of redemption —the only thing he had to convey to the exclusion or prejudice of his creditors—but expressly reserved the right to redeem the property by repayment to Flaherty of the amount of the two liens thereon. So the plaintiff was in no worse condition after the execution of the deed than before, for he still might subject the equity of redemption to the payment of his debt by proper legal proceedings. And, if it had been shown that Riley was acting with fraudulent

intent in making the deed with design to conceal a valuable equity of redemption, plaintiff could have obtained the sale of the equity of redemption in this suit, the prior debts having been first ascertained and fixed. *Curry* v. *Hill*, 18 W. Va. 370. He having failed to establish fraud, and having no lien on the equity of redemption in the manner provided by law, he is not entitled to subject it to sale.

And it plainly appearing that Riley, in the execution of the deed in controversy, did nothing to his exclusion or prejudice, or to give a priority, preference, or payment to other creditors which they did not already possess, the decree must be reversed, and the plaintiff's bill be dismissed, yet without prejudice to any proper proceedings to subject the equity of redemption to the payment of his debt.

BRANNON, JUDGE (*dissenting*):

The bill charged that the deed was without consideration, voluntary, and fraudulent. This called on the party to prove the consideration recited to be true. *Rogers* v. *Verlander*, 30 W. Va. 619 (5 S. E. 847). He did not do so, unless his answer be read as evidence. The rule was at one time that an answer responsive to the bill was conclusive evidence in favor of the defendant, unless overcome by two or more witnesses, or one witness and corroborating circumstances; but my understanding has been, and, as I had thought, also that of the profession, that our Code provisions had uprooted that rule and given the answer no force as proof, whether the bill be sworn to or not, or the answer sworn to or not, its only office being now to put the plaintiff to proof of those things in his bill calling for proof. Chapter 125, section 38, gives the plaintiff right, by swearing to his bill, to search the conscience of the defendant for purposes of discovery by thus requiring a sworn answer; but the answer is not evidence for defendant, as the section says that, if the answer be sworn to, it shall not be entitled to any more weight than if unsworn. Now, this means that though the bill be sworn to, and the answer likewise, yet the answer shall not have any more force from being verified by oath. It does not mean that it is no evidence only in the case where the bill is not sworn and the answer

is, leaving it to be implied that, where both are sworn, the answer is evidence. The plain meaning is that in no case is the answer evidence. This is plainer from section 59, declaring that when a defendant, in his answer, denies any allegation of the bill, its effect shall only be to put the plaintiff on proof of the truth of the allegation. Does not this apply to all answers, verified or not verified? Mr. Barton, in note in his Chancery Practice (page 396) so construes our statute. The very fact that section 59 declares that answers shall only put the plaintiff on proof, coupled with the fact that section 38, treating of those particular answers that are verified, declares that they shall have no more weight than if not verified, shows a cautious design in the lawmaker to pointedly and expressly so provide as to them.

After having written to this point, I accidently meet with the opinion by Judge Green in *Rogers* v. *Verlander*, 30 W. Va. 619 (5 S. E. 847) in which he discusses this matter, though the syllabus gives no intimation of it; and he says on page 640, 30 W. Va., and page 847, 5 S. E., that under our statute law, answers are no longer evidence in any case, whether sworn to or not.

Another matter: The allegation of the bill of the insolvency of Riley is undenied, and taken for true. That being so, he could not pay one creditor, to the total exclusion of others, by conveying his property to that creditor. I concede the preference of the deeds of trust, but an insolvent can not convey his property to that one creditor to pay those deeds of trust, and thus shut out others, saying the property is worth no more. The court can not, the parties can not, say it is worth no more. That remains to be seen when put up by other creditors. They may wish to buy it paying more. They have a right to put it to public sale. On the theory adopted by the circuit court that the conveyance was not voluntary or fraudulent, but only liable because the grantor, Riley, was insolvent, the decree ought to have been to sell the property, conceding the deed of trust preference. But there ought to have been a decree selling for Johnson's debt alone, because there was no proof, save the answer, that it was conveyed to pay the

deed of trust or any consideration freeing it from fraud. Their mere former existence did not prove the allegation of the answer that it was conveyed as payment of those deeds of trust.

Another matter: The opinion of JUDGE DENT holds that if the deed from Riley to Flaherty be void, because the grantee is not named in the granting part, then the plaintiff has no right to sue in equity, having no lien. I do not assent to this. If the deed do not pass legal title, yet it would operate as a contract to convey. If abortive to operate as a deed, a court of equity would hold it a contract to convey and enforce a proper deed. It vests in Flaherty an equitable estate. If, then, Johnson has right to sue, he can sue to avoid an executory contract, as well as a deed passing title, under the broad language "every gift, conveyance, transfer of, or charge upon any estate,  *  *  *  or other writing," of section 1, chapter 74, Code, and the language "sale, conveyance, transfer," in section 2.

And again, if a writing or judgment or other act be simply void, yet equity will entertain a bill to declare its nullity, and expressly avoid it, so as not to leave it open to question, as a cloud on one's title, or as impeding or shadowing the enforcement of his rights. If one make a writing to defraud creditors, and, for some defect, it is void, passing no title, may not the creditor yet assail it, to get it out of the way, and sell the purchaser, under his decree, a title unclouded by it, and enhance thereby the value of the property to pay his debt? Who would buy debt or property with this cloud overhanging? I have always understood that equity would assume such jurisdiction. 2 Story, Eq. Jur. §§ 699, 700; Wait, Fraud. Conv. §§ 418, 512.

But, second, is the deed void and ineffectual? It reads : "This deed, made the 3d Feb., eight hundred and ninety four, between C. C. Riley and E. Esta Riley, his wife, parties of the first part, and Patrick Flaherty, party of the second part;" and then contains a grant of the lot by "parties of the first part," without naming in this place a grantee. Elementary books say it is the office of that part of a deed called the "premises" to contain names of parties, the consideration, the thing granted, and declare who are

grantors and grantees.    Here the premises state that it is a
deed between certain parties of the first part and one of the
second part, and the parties of the first part grant.   Now,
to whom ?   Of course, to the party of the second part.   So
that the premises name parties, grantor and grantee.
Can it be doubtful who is grantee?   Even by strict con-
struction of the premises, do they not show who is grantee?
There is a grant of a thing, and the intent is plain as to the
grantee, just as plain as if his name were repeated in the
granting clause.   A deed must have parties, grantor and
grantee.   *Adams* v. *Medsker*, 25 W. Va. 127.   This has.

Another matter :   It is held that, because no fraud is es-
tablished, Johnson can not sue in equity without a lien.
Code, c. 133, s. 2, gives a creditor, before obtaining judgment
or decree for his claim, right to "institute any suit to thus
avoid any gift, conveyance, assignment of, or charge upon,
the estate of his debtor."    As shown above, the act assault-
ed in this suit is a conveyance, viewed as either a contract
or operative deed, within the meaning of the liberal con-
struction of the word "conveyance" in this statute.   It is
certainly a "sale" and "transfer" also.   It is also a sale un-
der section 2, chapter 74, and we ought to construe section
2, chapter 133, giving right to suit, to be as broad as the
first two sections of chapter 74; branding certain acts as
void as to creditors.   The remedy to avoid ought to be co-
extensive with the things that are to be avoided.

Then, as claimed above, I hold that fraud in fact,
in the absence of proof of consideration, save by the
answer, was established, and thus there is jurisdict-
ion.   But, in addition, if this were otherwise, then
the act of Riley, an insolvent, conveying property to
one creditor in payment of a debt, however valid and
precedent, thus giving preference and payment to him
to the exclusion of others, is in the teeth of the very
letter of section 2, chapter 74, Code, and is branded by it as
fraud in law, though not in fact, just as a voluntary con-
veyance is a fraud in law, and not in fact, and, like it, war-
rants the application to equity to overthrow it, under sec-
tion 2, chapter 133.   The fact that Flaherty's debt may be
honest or prior does not affect the question ; it is the fact

that the insolvent's act pays one creditor by an act which excludes another from the property that renders it fraudulent in law. Such act of an insolvent is implied fraud, not fraud in fact; but it is hurtful to the creditor, and just as fully justifies and calls for the remedy given the general creditor as the case of fraud in fact. Such is the statute; such the general law. Bump. Fraud. Conv. 24; Wait, Fraud. Conv. §§ 9, 10, 323; 1 Story, Eq. Jur. 258, 349. The statute prohibits certain acts of insolvents, stamps them as legal fraud on creditors, and that invokes the agency of equity to avoid them.