# CHARLESTON.

BAER SONS GROCER Co. *et al. v.* WILLIAMS *et al.*

Submitted Janury 19, 1897—Decided April 17, 1897.

1. DEED OF TRUST—*Merchandise—Extension of Trust—Fraud.*
   A trust deed on a stock of goods for the security of creditors which provides that the trustees shall take immediate possession of such goods, and manage them for the benefit of the trust, is not fraudulent *per se*, and void as to creditors, because it contains a provision allowing the grantor, without the power of sale, to replenish such stock of goods, and extending the trust to cover the same. (p. 326.)

2. DEED OF TRUST—*Fraud—Knowledge of Parties.*

Where neither the *cestui que* trust nor trustee has notice of the fraud in fact, which would otherwise render the trust deed invalid, it will not be held fraudulent as to them. (p. 328.)

3. DEED OF TRUST—*Merchandise—Preferred Creditors.*

Under section 2 of chapter 74 of the Code, a deed of trust which conveys a stock of goods to a trustee, to secure a creditor to the exclusion of other creditors of an insolvent grantor is void as to the preference thereby secured, although given for the present loan of money, there being no exception in the statute as to such creditors. (p. 329.)

4. DEED OF TRUST—*Insolvent Debtor—Liability of Trustee—Equity Practice.*

When a trustee under a deed of trust executed by an insolvent debtor, without notice to the vendor, takes possession of goods ordered on credit before the execution of the trust, but not shipped or received until afterwards, and sells them, and appropriates the proceeds to the use and benefit of the trust, a court of equity, at the instance of the vendor, will charge the value of such goods as a prior lien on the trust funds in the hands of such trustee. (p. 331.)

Appeal from Circuit Court, Mason county.

Suit by Baer Sons Grocer Company and others against N. B. Williams, John E. Beller, and others. Decree for defendants, and plaintiffs appeal.

*Reversed.*

TOMLINSON & WILEY, for appellants.

JOHN E. BELLER and GEO. POFFENBARGER, for appellees.

DENT, JUDGE:

Baer Sons Grocer Company and others, creditors of N. B. Williams, filed their bill in the Circuit Court of Mason County against John E. Beller, trustee, and others, attacking the following deed of trust as fraudulent *per se,* fraudulent in fact, and void as a preference, under section 2, chapter 74, Code: "Deed of Trust. This deed, made the 21st day of November, 1894, between N. B. Williams, of the first part, and John E. Beller, trustee, of the second part, all of Mason county, West Virginia, witnesseth: That for and in consideration of the sum of one dollar, the receipt whereof is hereby acknowledged, the said party of the first part does hereby grant unto the said John E.

Beller, trustee, all of the following named and described personal property, now being situate in the brick building now occupied by the said N. B. Williams as a grocery, on the west side of Main street, between Fourth and Fifth streets, in the town of Point Pleasant, Mason county, West Virginia, viz: 3 show cases, 1 cheese case, 1 extract case, 1 stepladder, 1 broom rack, 1 pair Fairbanks' scales, 14 barrel covers, office outfit, 5 lamps, 1 oil tank, 1 meat saw, 2 meat knives, 1 meat rack, 1 turine holder, 1 beef clipper, 1 fruit case, 2 pair scales, 2 cracker cases, 4 tea cans, 3 small tea cans, 1 refrigerator, 2 curtains, 1 barrel truck, 1 outside fruit case, one delivery wagon, 1 black horse; also all the goods, wares, merchandise, groceries, queensware, and other goods now being in said building above mentioned, where said N. B. Williams is now doing business in said town of Point Pleasant,—in trust to secure A. F. Kisar, or order, the payment of two certain promissory notes, each bearing even date with this deed, each for the sum of five hundred dollars, with eight per cent interest from date, each payable to A. F. Kisar or order, each being executed by the said N. B. Williams, one of said notes due and payable in thirty days from date, the other of said notes due and payable in sixty days from date. And it is agreed that in case default be made in the payment of said notes or either of them, together with the interest thereon, when they respectively become due and payable, that then said trustee shall, at the request of the owner of said notes, or either of them, sell for cash the property hereby conveyed, after first advertising the time, terms, and place of sale in the manner prescribed by law. And it is further agreed that said party of the first part shall keep in stock, at all times, goods, wares, merchandise, groceries, queensware, and other goods in said places of business to an amount equal to the stock of goods now on hands in said building, and hereby conveyed; and the lien of this deed shall attach to all of such goods, wares, merchandise, groceries, queensware, and other goods which the said N. B. Williams shall from time to time put into said building and stock of goods, the same as if such goods were herein specifically set forth. And it is further agreed that such trustee shall take immediate possession of the property hereby conveyed, and hold and manage the same for the

purposes of this trust. And the said party of the first part warrants generally the property hereby conveyed. Witness the following signature and seal. N. B. Wllliams. [Seal.]" Defendants insist the bill is demurrable for multifariousness. A plaintiff has the right to join in the same bill different causes of action between the same persons, and affecting the same subject-matter. This is elementary law.

1. Is the deed fraudulent *per se?* Plaintiffs insist that the clause allowing the grantor to replenish the stock renders it so, although the trustee is to take immediate possession thereof, and manage the same for the benefit of the trust. There is nothing on the face of the deed to show that the grantor is indebted to any one else, or that she has not other means to purchase goods to replenish the stock; and it is not unreasonable to suppose that she desired to keep the stock fully replenished, so as to keep the business profitable, that the proceeds thereof would sooner pay off the trust lien. Between herself and the trust creditor, where the rights of others do not interfere, there is no good reason why the new goods purchased by her should not become subject to the trust lien without the continual renewal thereof. If, however, it was contemplated by the grantor and the trust creditor that she should buy goods on credit, and that the trust should extend to such goods, such trust would be fraudulent as to subsequent creditors. This does not appear from the deed, but depends on extraneous testimony; and, as far as the deed shows, it may have been entered into in perfect good faith, without the remotest intention to commit fraud. If the grantor had retained the right to sell as well as replenish, then the deed would have been fraudulent *per se.* The possession is given at once to the trustee, which precludes the implied right to sell, which would have otherwise resulted from the language used. Counsel insist that the possessory clause was inserted to evade the former decisions of this Court. Was it not inserted rather to comply therewith, and render the trust legal and valid? It is also insisted that the trustee had no power of sale for thirty days. This means in bulk. The power given him to manage the same for the benefit of the trust, it being a stock of merchandise, would authorize him to sell at retail, if

beneficial to the trust, until the time should arrive to sell in bulk. The right to sell at retail is a necessary implication from his authority to manage and control. In the case of *Landeman* v. *Wilson*, 29 W. Va. 707, (2 S. E. 205), it is said: "In all, or at least in most, of the cases in Virginia and in this State, where deeds of trust have been held fraudulent on their face, it appeared that the property conveyed, or a part thereof, was of a perishable nature, and the deed contained a clause permitting the debtor to retain possession and control." *Lang* v. *Lee*, 3 Rand. (Va.) 411; *Sheppards* v. *Turpin*, 3 Grat. 373; *Spence* v. *Bagwell*, 6 Grat. 444; *Addington* v. *Etheridge*, 12 Grat. 436; *Kuhn* v. *Mack*, 4 W. Va. 186; *Gardner* v. *Johnston*, 9 W. Va. 403. In the following cases the right to possession and sale was implied from the terms of the instrument: *Claflin* v. *Foley*, 22 W. Va. 434; *Livesay* v. *Beard*, Id. 585; *Klee* v. *Reitzenberger*, 23 W. Va. 749; *Shattuck* v. *Knight*, 25 W. Va. 580. Where the property is not consumable, or of such character that the right of sale thereof is necessarily implied, the retention of possession is not inconsistent with a deed of trust thereon. *Klee* v. *Reitzenberger*, 23 W. Va. 749. There is not sufficient on the face of the present deed to indicate fraud. The grantor neither retains possession, nor the right of sale, but immediately turns the property over to the trustee to be managed for the benefit of the trust. There was nothing to hinder creditors from at once obtaining a lien on the equity of redemption, and having the same enforced by a court of equity. *Doheny* v. *Dynamite Co.*, 41 W. Va. 1, (23 S. E. 525); *Harris* v. *Alcolls*, 32 Am. Dec. 158.

2. Is the deed fraudulent in fact? O. F. Williams, who was doing business in the name of his sister, N. W. Williams, and who engineered this whole transaction in her name, and almost entirely without her knowledge, did so undoubtedly with fraudulent intent towards the creditors. Instead of endeavoring to pay them, he was trying to get their property beyond their reach. Pressed by the creditors, he borrows one thousand dollars on the stock, part of which he pays on the debts, but the larger part of which he at least pretends not to know what he did with, except that he used it. In the whole transaction his fraudulent

intent is painfully apparent, and, if it had been shown that the creditor Kisar had notice thereof, the deed must be held to be fraudulent and void as to the plaintiffs. He was placed on the witness stand by the plaintiffs, and testified that he had been informed by A. F. Williams that one thousand dollars would free the store from debt, and enable him to replenish the stock, and, upon this showing, he furnished him six hundred dollars, and had a note discounted at the bank for four hundred dollars, in which was included a fifty dollar note, and it might be a one hundred dollar note, pre-existing indebtedness; that the transaction was in good faith, for the purpose of enabling a continuance of the business; that a bill of sale for the goods, in consideration of the trust debt, had been tendered him, which he refused, on advice, to accept. If his evidence is to be believed,—and it seems to be vouched for by plaintiffs,—he was acting in good faith, without notice of fraudulent intent. *Merchandise Co.* v. *Laird,* 37 W. Va. 687, (17 S. E. 188); *Goshorn's Ex'r* v. *Snodgrass,* 17 W. Va. 717.

3. Is this deed of trust void as a preference, under Code, c. 74, s. 2? The clause of the section referred to is in these words: "And every gift, sale, conveyance, assignment, transfer or charge made by an insolvent debtor to a trustee, assignee, or otherwise giving, or attempting to give a priority or preference to a creditor or creditors of such insolvent debtor, or which provides or attempts to provide for the payment in whole or in part of a creditor or creditors of such insolvent debtor, to the exclusion or prejudice of other creditors, shall be void as to such priority, preference or payment so made, or attempted to be made." N. B. Williams was undoubtedly insolvent, from her own showing. She owned nothing at all, but what was covered with debt. The only thing tangible that she had, other than the store, was a piano, bought on the installment plan, unpaid for, with the title reserved. She makes an absolute assignment of the store and fixtures, turning them over to a trustee immediately to secure a single preferred creditor, to the exclusion of all her other creditors. It is true that it was not to secure a debt wholly pre-existing. The statute makes no exceptions as to creditors with regard to when the debt is created, ex-

cept in the case of the "sale, transfer, or assignment of bonds, notes, stocks, securities, or other evidence of debt," but all creditors, without relation to the time when or manner in which their debts were contracted, are placed in the same category, and subject to the same restrictions. In the section as amended by chapter 4, Acts 1895, an exception is contained, in these words: "Provided, further, that nothing in this section shall be taken to prevent the making of a preference as security for the payment of purchase money, or a *bona fide* loan of money, or other *bona fide* debt contracted at the time such transfer or charge was made, or as security for one whom at the time of such transfer or charge becomes an endorser or surety for the payment of money then borrowed." But there is no such provision contained in Code, c. 74, s. 2. The legislature of 1891 did not intend to place in the hands of a debtor the power of rendering the law of no effect. By borrowing money and giving a trust lien on his property, he could defraud all his pre-existing creditors, or prefer any one of them he pleased, to the exclusion of all the rest, if such had been the law. Far better would it be to have no law than to have one so easily evaded. In the case of *Wolf* v. *McGugin*, 37 W. Va. 552 (16 S. E. 797), it was held: "The form of the instrument or act by which the preference forbidden by the statute, whether by deed of trust, assignment, or sale, is accomplished, is not material, so that it results in such a preference, it being the design of the statute to prevent an insolvent debtor from devoting his property to work a preference among his creditors." In other words, the insolvent debtor's property being limited, the design of the law is to prevent his disposition thereof in such manner as to have the same applied on some of his debts, to the exclusion of others, and to cause the same to be divided *pro rata*, that all may share alike. As is said in the case of *Johnson* v. *Riley*, 41 W. Va. 146 (23 S. E. 698), there are three ways in which an insolvent debtor may dispose of his property without infringing the statute: First, to a *bona fide* purchaser for value without notice; second, to secure all his creditors *pro rata*; third, to satisfy specific liens on the property involved. But he can not convey the same to a trustee to secure one creditor to the exclusion of others. In case his

debt is *bona fide* and just, this determination is apparently harsh as to the creditor Kisar, but he is presumed to have been fully advised as to the law; and he knew that the grantor was largely indebted, and voluntarily placed himself in the position of a creditor, subject to the provisions of the statute. With the information he had, he should have seen that the money furnished by him went to pay the debtors of N. W. Williams, for his own protection, if not for that of others. Then his deed of trust might have been ample, and he would not have been called upon to share it with the other creditors. Having failed to do so, and obtained an exclusive preference, though he was the latest arrival, the law places him on an equality with those who have borne the heat and burden of the day. That he should lose a *pro rata* share of his debt is no more than all the other creditors do. The law as it now exists makes an exception that apparently would be favorable to him had his trust lien been created after the 16th day of February, 1895. This, however, will depend upon what construction may be hereafter given to the meaning of the words "*bona fide* loan." As the law was at the time of the creation of his trust, his preference must be held void, and the property subject thereto must be divided *pro rata* among all the creditors of N. B. Williams.

The appellants claim that goods to the amount of one hundred and eighty-four dollars and forty-six cents went into the store, and were taken possession of and sold by the trustee after the assignment, which had been ordered from it before. The witness O. F. Williams says these goods were ordered before the trust was executed, and were withheld by the appellants; but, on the day the trust was executed, he sent them a check for two hundred and twenty-five dollars on account, and then appellants sent the goods, which were received by the trustee as part of the stock. An agent of the appellants saw the goods in the store, but did not demand them. It is well settled that, where an insolvent person orders goods on credit on the eve of assignment, the title to such goods does not pass, although they were received prior to the execution of the assignment. *Donaldson* v. *Farwell*, 93 U. S. 631. In the case of *Durell* v. *Haley*, 1 Paige 492, a judgment and execution were obtained against the defendant Haley on

the 7th August, 1826. On the 8th and 9th he purchased goods from the plaintiff, who had no knowledge of his insolvency, and placed them in his store, where they were levied on by virtue of the execution. The plaintiff filed his bill to recover the goods. The chancellor held the bill maintainable, on the grounds of fraudulent concealment, and decreed a restoration. *Buckley* v. *Artcher*, 21 Barb. 589; *Rawdon* v. *Blatchford*, 1 Sandf. Ch. 347; *Nichols* v. *Pinner*, 18 N. Y. 306. In the case of *Root* v. *French*, 13 Wend. 570, it was held that a creditor who received on his indebtedness goods purchased by an insolvent debtor on credit was not a purchaser for value, without notice of the fraudulent character of such debtor's title. In the present case, the goods, though ordered before, were not sent or received until after, the execution of the trust, of which the appellants were not notified. The trustee, instead of returning them, as he should have done, took possession of them, and put them in the stock. They were sold at retail along with the other goods, and the proceeds thereof went to swell the funds of the trust. To allow their retention, unpaid for, would be to perpetrate a fraud upon the appellants. The implied right of the trustee to sell at retail would authorize him to replenish the stock to a limited extent, and if he does so, and the trust funds are augmented by his purchases, such funds will be held liable for debts thus created by him. *Kyle* v. *Harveys*, 25 W. Va. 716. It has also been held that property obtained by one through fraudulent practices of a third person will be held under a constructive trust for the benefit of the person defrauded, though the person receiving the benefit is innocent of collusion. 1 Perry, Trusts, § 211. It is true, appellants might have sued at law in trover and conversion, detinue, or *assumpsit*, but this does not deprive them of the right to charge the trust funds in the hands of the trustee for a debt fraudulently contracted. The goods were not sold to the trustee, but he took possession of them, with full notice, and appropriated them to the trust. They are therefore chargeable against the fund. In the case of *Kupferman* v. *McGehee*, 63 Ga. 255, it is said: "That the account was against the trustee individually did not prevent it from being afterwards treated as a debt of the trust estate, if the articles embraced in it were really

purchased for the use of the estate, were adapted to its use, and the estate took the benefit of them." Also: "Trusts are children of equity; and in a court of equity they are at home,—under the family roof tree, and around the hearth of their ancestor. A court of law may entertain them; but when the case is complicated, especially when it has a flavor of fraud, equity will not banish them, and remit the parties to another forum. Equity delights in protecting trusts, and it delights no less in obliging trustees and trust estates to render to all men their due." 2 Perry, Trusts, § 815*b*.

The decree complained of is reversed, and the deed of trust executed by N. B. Williams on the 21st day of November, 1894, is held invalid as to the preference thereby sought to be created, but as a valid assignment for the benefit of all the creditors of the grantor, subject, however, to the debts created by the trustee beneficial to the trust estate; and this cause is remanded to the circuit court, with directions to settle the accounts of the trustee, and, after the payment of the just and beneficial debts incurred by the trustee in the management of the trust, to disburse the residue of the trust funds *pro rata* among all the creditors of N. B. Williams, and, in doing so, to conform to this opinion and the rules and principles of equity.

*Reversed.*