## CHARLESTON.

CARR v. SUMMERFIELD *et al.*

Submitted June 14, 1899—Decided November 28, 1899.

1. INSOLVENCY.
    A person is insolvent, within the meaning of section 2, chapter 74, Code, when all his property is not sufficient to pay all his debts. (p. 170).

2. PURCHASE OF REDEMPTION—*Valid Lien Not Affected by.*
    A valid lien is not devested by the mere fact of the holder of it subsequently taking a transfer of the equity of redemption, made to him with a view of giving him a preference, and in violation of section 2, chapter 74, Code. (p. 177).

3. INSOLVENCY—*Purchase—Good Faith Priority.*
    A creditor, who purchases and has transferred to him real estate from an insolvent debtor, in good faith, without knowledge of the insolvency, applying his debts on account of the purchase price, and paying in cash the residue of the purchase price, in a proceeding to set aside the preference given him under section 2, chapter 74, Code, he is entitled to preference for the cash paid, under said section, as "a *bona fide* debt contracted at the time such transfer was made" to him. (p. 175).

4. ASSIGNMENT—*Account—Payee Protected.*
    An assignment of an account, or an order to one who owes the account, to pay the amount due thereon, or any specific part of it, to the payee in the order, is such a transfer of an evidence of debt as will be protected by the last provision of section 2, chapter 74, Code. (p. 179).

Appeal from Circuit Court, Randolph County.

Bill by N. J. Carr against A. H. Summerfield and others. Decree for plaintiff, and defendants appeals.

*Modified.*

FLICK, WESTENHAVER, & NOLL, and E. A. CUNNINGHAM, for appellants.

L. D. & J. F. STRADER, for appellee.

McWHORTER, JUDGE:

At April rules, 1897, N. J. Carr filed his bill in the circuit court clerk's office of Randolph county against A. H. Summerfield, John W. Heltzel, C. Ed. Lukins, Columbus Kerens, John W. Teter and Martha Teter, his wife, A. J. Bennett, Hannah Arbogast, Sampson Snyder, J. F. Harding, trustee, Charles Hedrick, Ellen Teter, J. M. Harper, D. S. Cunningham, trustee, and A. H. Harper, Sr., alleging that on the 10th day of August, 1896, defendants Summerfield and John W. Heltzel, executed to plaintiff two notes, —one for one hundred and ninety-two dollars and fifty cents payable fifty days after date, with interest, and the other for one hundred and ninety-two dollars and forty-nine cents, at one hundred and ten days, with interest; that the aggregate amount of said notes was due plaintiff at the date thereof from Summerfield, who procured Heltzel to become his surety in order to procure from plaintiff the time which was given in said notes; that no part of said notes was paid except two small payments of four dollars and fifty cents and twenty dollars, paid, respectively, November 2, 1896, and February 9, 1897; and that defendant Summerfield was also indebted to plaintiff in the further sum of fifteen dollars and twenty-six cents on account of saw logs sold him,—and filed said notes and account as exhibits; alleging that defendant Summerfield was, until a short time before the institution of his suit, the owner of considerable real and personal property, and was considered by his neighbors generally to be solvent, and able to pay his debts; and a very few days after he commenced disposing of his property, as thereinafter stated, the said Summerfield represented to his creditors, and especially those to whom he did not sell property, that he was broke

up, and insolvent. The bill alleges that he was the owner
of a valuable boundary of land on the Alleghany Mountain,
part of which is in Randolph County and part in Pendleton
County, which, by deed, it was claimed he conveyed to
Charles Ed. Lukins, acknowledging therein as the consid-
eration two thousand dollars paid in hand; that about the
time of the alleged sale to Lukins, which was a short time
before the bringing of this suit, said Summerfield sold and
conveyed to defendant John W. Heltzel a tract of one hun-
dred and fourteen acres and an undivided sixth in a tract
of three hundred and twenty-five acres on the waters of
Shaver's Fork in Randolph County; that about the same
time he sold to defendant Columbus Kerens about five hun-
dred dollars worth of sawed lumber and saw logs; that
about the same time he sold to defendant A. J. Bennett
certain live stock, consisting of one yearling, two calves,
two horses, one mule, about fifty thousand feet of sawed
lumber, one haystack, and assigned to him a claim of five
hundred dollars upon parties to whom said Summerfield
had theretofore sold lumber; that about the same time he
sold to defendants John Teter and Martha Teter, his wife,
or to one of them, two horses, three cows, and one wagon,
and perhaps other personal property; that some time be-
fore these transactions said Summerfield conveyed a tract
of sixty acres of land in trust to defendant J. F. Harding,
trustee, to secure the payment of a debt to defendant
Charles Hedrick, a debt to the defendant John Teter,
and debt to defendant Ellen Teter, but whether said
debts had ever been paid, or what had become of the
said Summerfield's title to said land, plaintiff was not ad-
vised; that by deed of May 21, 1896, Summerfield conveyed
to defendant D. S. Cunningham a tract of forty-five acres
on Dry Fork of Cheat in said Randolph County, to secure
a debt of six hundred and thirty-eight dollars and forty-
five cents to the defendant A. H. Harper, Sr.; that plain-
tiff was informed that same was sold under said trust deed,
and bought by said Harper, and the debt paid; that defend-
ant Hannah Arbogast had docketed upon the judgment lien
docket of Randolph County a judgment for seventeen dol-
lars and ninety-five cents costs against Summerfield and
defendant Sampson Snyder, but whether it had been paid

plaintiff was not advised; that defendant J. M. Harper obtained a judgment in the circuit court of Randolph County against Summerfield at the January term, 1897, for three hundred and twenty-five dollars. and twenty-eight cents and costs, upon which execution was issued, and returned by the sheriff "No property found;" that, at the time of the conveyance of the real estate to the defendant Lukins and to Heltzel, and the sales of the personal property to the other defendants by said Summerfield, as stated, and the assignment to the defendant Bennett of the claim for lumber sold, the said Summerfield was insolvent, and that the sales of said property were fraudulent as to plaintiff's debt, and said sales should be held and treated for the benefit of all the creditors of said Summerfield, because at the time of the several conveyances and sales the said Summerfield was indebted to the said parties, respectively, to whom the same were made, and that by the said sales and conveyances Summerfield disposed of all his property, and that, if it should turn out that said Summerfield was not insolvent at the time of making said sales and conveyances, then they were voluntary, and therefore fraudulent as to creditors of said Summerfield, and that said sales and conveyances were made with intent on the part of Summerfield to hinder, delay, and defraud his creditors, and especially plaintiff, in the collection of his debt, and that the purchasers of said property had notice of such intent of said Summerfield; that defendant Lukins had not in fact paid said Summerfield for the real estate so purchased by him, and that he was still indebted to Summerfield therefor for a considerable portion of the purchase money; that Summerfield was still residing on said land, and that the transaction between him and Lukins was intended to deprive the plaintiff of the collection of his debt,—and prayed that each of the purchasers of the real and personal property from said Summerfield be required to answer the bill, and disclose what their debts were at the time of the said purchases, respectively, what property they so purchased, what the said Summerfield is entitled to have paid to him or his creditors from them, respectively, on account of such sales; that the debts against Summerfield be ascertained, and that the property, real and personal, be sold,

and the proceeds applied to the debts of Summerfield *pro rata*; that said deeds to Lukins and Heltzel be set aside, and the property thereby conveyed be sold to pay the debts, and, if that could not be done under the facts as they should be made to appear in the cause, that each of said purchasers might be required to pay upon the several unpaid debts of said Summerfield any balance of purchase money which they might owe upon the property so purchased by them; and for general relief.

Defendant Summerfield filed his answer, admitting the claim of plaintiff as set up in the bill; that he made the conveyances to Charles Ed. Lukins and John W. Heltzel as charged, and the execution of the trust deed to D. S. Cunningham to secure the payment of six hundred and thirty-eight dollars and forty-five cents to A. H. Harper, Sr., but averring that said debt had been discharged by an absolute conveyance of said land in fee to said Harper, admitting that he sold to defendant Kerens certain saw logs and sawed lumber about the time it was alleged to have been done, but denies said lumber amounted to near five hundred dollars; that he sold to A. J. Bennett the personal property mentioned in the bill, and that he assigned to him an order on William Whitmer & Sons for five hundred and eighty-five dollars and sixty-eight cents mentioned in the bill as five hundred dollars, and that he sold to John Teter and Martha, his wife, the property as alleged; that defendant Heltzel agreed to pay off the debt to plaintiff, and release plaintiff from all liability, in consideration whereof, and the further consideration of the payment of the J. M. Harper judgment by said Heltzel for respondent he in good faith conveying to Heltzel the real estate mentioned in the bill,—one hundred and fourteen acres and one-sixth of three hundred and twenty-five acres; that, while said deed inadvertently recites a consideration of five hundred dollars, no other consideration than aforesaid passed between Heltzel and respondent in the conveyance, and that said real estate was amply worth the aggregate amounts of said debts, with accrued interest and costs, and that Heltzel was wholly solvent, as respondent was advised and believed; that the conveyance to Lukins was made in good faith, for valuable consideration; that re-

spondent was thoroughly solvent, and without any intention of fraud on his part, or to hinder or delay his creditors, or to prefer one over the other and that the sale of the personal property to A. J. Bennett and the assignment to him of the order for five hundred and eighty-five dollars and sixty-eight cents on William Whitmer & Sons was in good faith, and for valuable consideration; that the payment of the sum of nine hundred and eighty-nine dollars and sixty cents in the aggregate, which respondent then justly owed Bennett, was done without any fraudulent intention, or to hinder and delay the plaintiff in the collection of his debt; the sales to Columbus Kerens and to John and Martha Teter were also made in good faith, and for valuable consideration, and without fraud, or intent to hinder and delay his creditors; and denies that said sales should be held and treated for the benefit of respondent's creditors, or that said sales were either voluntary or fraudulent as to creditors; and denied each and every allegation of the bill not admitted, and required strict proof on the part of plaintiff.

Defendant Charles Ed. Lukins filed his answer, admitting the purchase of the land conveyed to him by Summerfield. That he paid one thousand nine hundred and seventy-two dollars, as follows: "By amount of debt due from A. H. Summerfield to respondent for the sum of six hundred and sixty-three dollars and fifty-five cents, including interest, the same being secured by a deed of trust executed May 23, 1896, and of record in the clerks' office of the county court of Pendleton County; by the further sum of three hundred and eighty-four dollars and eighty-six cents, including interest, amount of A. H. Summerfield's note to respondent, executed August 11, 1896; by the further sum of six hundred and one dollars and eighty-four cents, including interest, amount of A. H. Summerfield's note to respondent, executed November 10, 1896, and by the further sum of three hundred and twenty-one dollars and seventy-five cents, cash in hand paid by respondent to A. H. Summerfield on date of deeds. That all of the aforesaid debts had been contracted by said A. H. Summerfield to respondent in good faith, and for valuable consideration, and at the date of making said deeds were due and paya-

ble to respondent." That respondent at said date had no knowledge whatever of the alleged insolvency of said Summerfield, or of his alleged intention to hinder, delay, and defraud plaintiff in the collection of his debt, or to make preference in favor of any of his creditors over others. And therefore he says said deeds were not for a voluntary consideration as alleged, and denies the right of plaintiff to have them set aside in a court of equity, and denies generally each and every allegation of the bill not admitted, and calls for proof of each allegation relating to respondent.

Defendant A. J. Bennett answered, and admitted the assignment to him of the claim on William Whitmer & Sons for five hundred and eighty-five dollars and sixty-eight cents, and the purchase of the personal property from Summerfield, altogether aggregating nine hundred and eighty-nine dollars and sixty-eight cents, which assignment and transfer of property was in full of Summerfield's indebtedness to him; that the transaction was done in good faith on his part; and denies that at the time or before the transaction and the filing of plaintiff's bill he had any knowledge of the alleged insolvency of Summerfield, the preferment of any of his creditors to others, or of any intention on the part of Summerfield to hinder, delay, and defraud plaintiff in the collection of his debt; and denies any intention on his part to so hinder, delay, and defraud pliantiff; and denies generally each and every allegation of the bill with reference to him not admitted, and calls for strict proof of same on part of plaintiff,—all of which answers are sworn to.

Defendant Columbus Kerens answered, admitting that he purchased certain lumber from Summerfield, which was afterwards to be scaled and measured, which amounted to the sum of two hundred and eighty-three dollars and sixteen cents by actual measurement; that said purchase was made in good faith, and for valuable consideration, which had been paid by respondent to Summerfield before the institution of plaintiff's suit; that respondent had no knowledge of the alleged insolvency of said Summerfield at the time of the transaction or the filing of plaintiff's bill; that he had no intention, in the purchase of said lumber, to in

any manner hinder, defraud, and delay the plaintiff in the collection of his debts against said Summerfield, and, further, had no knowledge of the alleged preference of any of his creditors one over the other; and denied each and every allegation of the bill not admitted, and called for strict proof of the same. This answer is not sworn to.

Depositions were taken, and the cause heard on October 14, 1897, and was referred to Commissioner W. E. Baker to ascertain and report the real estate owned by defendant Summerfield on the 11th of January 1897; the date of the deeds made to defendant Lukins, the value of the said real estate, including that so conveyed; the debts owing by said Summerfield, the amounts thereof, to whom owing; whether any liens existed upon said real estate, or any part thereof; and whether said Summerfield was insolvent at the date of said deeds of conveyance, or whether he was insolvent prior thereto; and what personal property he had disposed of, as well as real estate, since the date of his insolvency, and what he was the owner of at the time of the decree, and the value of same. The commissioner filed his report, showing the value of all real estate belonging to Summerfield on the 11th day of January, 1897, to be three thousand one hundred dollars, and the personal property owned by him on the 1st day of January, 1897, one thousand three hundred and thirty-nine dollars and sixty-eight cents,— making a total of assets of four thousand four hundred and thirty-nine dollars and sixty-eight cents,—all of which was disposed of by said Summerfield after his insolvency, which he found to exist on the 1st day of January, 1897. The commissioner also ascertained the debts owing by said Summerfield on the said 1st day of January to aggregate the sum of four thousand nine hundred and forty dollars and forty-nine cents. To this report the defendants Summerfield, Bennett, Lukins, Kerens, and John and Martha Teter indorsed seven exceptions: Because he erroneously reports that, in his opinion, Summerfield was insolvent on the 1st day of January, 1897; because he erroneously reports the value of the one hundred and fourteen acre tract and the one-sixth of three hundred and twenty-five acres, conveyed by Summerfield to Heltzel by deed of February 22, 1897, to be only five hundred dollars; because he er-

roneously reports a debt in favor of John W. Heltzel against
Summerfield for the sum of eight hundred dollars; because
he erroneously includes in the list of debts upon which he
bases his report of the insolvency of said Summerfield,
debts named therein, and aggregating one thousand and
fifteen dollars and forty-two cents, which exceptors claim
are unsupported by proof that they were in existence on
the 1st day of January, 1897, the date of the reported in-
solvency of Summerfield; and because the commissioner
erroneously charges Summerfield with certain debts or
judgments named, without making his co-obligors partners
to the suit, and without which judgments they claim Sum-
merfield could not be found insolvent. Plaintiff also ex-
cepted to the report because the commissioner, in ascer-
taining and reporting debts due from Summerfield to the
several creditors named by him, including plaintiff, had
not ascertained and reported the interest accrued, so that
the court could base a decree thereon. And W. C. Harman
& Co. excepted to the report in so far as it failed to give
their judgment priority of lien against the real estate of
Summerfield over all other judgments, because it was
first recorded, as shown by said report.

On the 1st day of February, 1898, the cause was again
heard, when the said several exceptions to the report were
overruled, as was also a demurrer to the bill. It was as-
certained that defendant Summerfield was insolvent on the
1st day of January, 1897, and that all sales made by him,
after that date, of his real estate and personal property, to
creditors, by which he attempted to prefer creditors, were
fraudulent as to such preference, and that such sales
should be treated as having been made for the benefit of all
creditors; and decreeing that, said sales appearing to be
for an adequate price, the same should be confirmed at the
prices for which the property was sold by him, except the
sale and conveyance to Heltzel of one hundred and four-
teen acres and one-sixth of three hundred and twenty-five
acres, which sale should be set aside, and accordingly con-
firmed the sales to Lukins,—the one at one thousand four
hundred and seventy-two dollars, the other at five hundred
dollars,—and the sale of personal property to A. J. Ben-
nett, aggregating nine hundred and eighty-nine dollars

and sixty-eight cents; and the sale of the lumber to Kerens at two hundred and fifty dollars, for the benefit of all the creditors of Summerfield, and set aside the sale to Heltzel, and proceeded to ascertain the liens upon the said one hundred and fourteen acres and one-sixth of three hundred and twenty-five acres; that the judgment of defendant Hannah Arbogast for twenty dollars and forty-five cents was the first lien, and the judgment of J. M. Harper for three hundred and fifty-six dollars and twenty-five cents was next in order of priority, and decreed a sale of said property to satisfy said liens; and the cause was recommitted to the said commissioner to ascertain and report all the valid debts existing against said A. H. Summerfield, to whom owing, and the amounts thereof at the times of the sales of the property theretofore reported by said commissioner as having been made after the insolvency of said Summerfield, and the priorities of said debts, if any, as liens on any of said property, and to ascertain the pro rata amount to which each of the creditors may be entitled by reason of said sales of the property being treated as having been made by Summerfield for the benefit of all his creditors, except as to specific liens. The commissioner again reported, to which report exceptions were indorsed as follows: "Defendants Chas. Ed. Lukins, Columbus Kerens, and A. J. Bennett make and indorse the following exceptions to both reports of Comr. Baker filed in this cause at the present term, May, 1898, of this court, the same to apply as if specifically indorsed upon each report: (1) They except to the item of eight hundred dollars allowed in said reports to defendant John W. Heltzel, because no note, statement in writing, or other itemized account, with the dates thereof, have been filed by him in this cause, upon which to base said report, and to enable these co-defendants to make proper defense thereto, as they are entitled in a court of equity; that the evidence in support of said item is entirely too vague, indefinite, and unsatisfactory to sustain it as a charge against said Summerfield to the prejudice of defendants now excepting. (2) That said reports fail to charge said Heltzel with the specific execution of his contract in the purchase of the one hundred and fourteen acres and the undivided one-sixth of three hun-

died and twenty-five acres of land mentioned and described in complainant's bill from said Summerfield with full knowledge on his part of the insolvency of said Summerfield at the date of purchase, with the fraudulent intent upon his part of securing his alleged debt from Summerfield to the prejudice of these defendants. (3) That said reports fail to show that all of the real estate owned by the said Summerfield at the date of his insolvency as found by a former report herein, to wit, on the 1st day of January, 1897, including the tracts purchased by said Lukins, had not been sold at the date of the said report, and therefore the pro rata amounts found in favor of each creditor mentioned in said reports are incorrect, and should be set aside. (4) Chas. Ed. Lukins especially excepts to said reports because they fail to allow him the full amount of his debt from said Summerfield, the sum of six hundred and thirty-eight dollars and forty-five cents, with its accrued interest, secured by deed of trust executed by said Summerfield and wife on the 16th day of June, 1896, and duly admitted to record in the clerk's office of the county court of Pendleton County, the county in which said real estate is situate, and because said reports fail to report the priority of said trust debt according to its dignity. (5) That said reports fail to allow him the sum of three hundred and sixty-four dollars, amount of cash purchase money paid by him to said Summerfield in part payment of said real estate, in payment of a bona fide debt contracted at the time the transfer was made thereof to him by said Summerfield, and is not affected by said transfer. (6) The defendant A. J. Bennett excepts especially to said reports because they fail to allow him the full sum of eight hundred and eighty-nine dollars and sixty cents, the amount of the order on Wm. Whitmer & Sons, with its accrued interest, which was on the —— day of February, 1897, transferred to him by said Summerfield in payment of a bona fide debt then due from said Summerfield to him, and is not affected by said transfer. (7) These defendants except to said reports because they were prematurely made, the real estate of the said Summerfield owned by him on the 1st day of January, 1897, not having been sold, the proceeds therefrom ascertained, and for other errors apparent therein.''

On the 7th day of May, 1898, the cause was again heard upon papers and former proceedings, and upon the special commissioner's report of sale of the one hundred and fourteen acres and the one-sixth of three hundred and twenty-five acres, which was sold to the lien holder J. M. Harper at the price of two hundred and fifty-two dollars, which sale was confirmed by the court, and the proceeds of the sale applied, first, to the costs of sale, then the small judgment of Hannah Arbogast, and the residue to the judgment of said J. M. Harper; and it appearing to the court from the last report of Commissioner Baker that by reason of the payment of the debt of Arbogast, and the credit placed upon the judgment of J. M. Harper from the proceeds of said sale by Commissioner Strader, it would be necessary to reform the statement of the per cent. of the pro rata share of each creditor, so that a decree could be made, the cause was therefore recommitted to Commissioner Baker, with instructions to reform his report by making a calculation and statement of the debts reported by him against the defendant A. H. Summerfield, and by showing the proper amount to which each creditor will be entitled by reason of the property sold by him to the defendants C. Ed. Lukins, Columbus Kerens, and A. J. Bennett, after the application of the proceeds of the sale of land by Commissioner Strader, and that he report forthwith. Said commissioner filed his report, correcting the per cent. to be paid as directed. The cause came on again to be heard on the 14th of May, 1898, when the defendants Charles Ed. Lukins and A. J. Bennett tendered their separate amended and supplemental answers in the nature of cross bills to the bill of plaintiff, to the filing of which plaintiff objected, but the objection was overruled, and the answers allowed to be filed, to which plaintiff replied generally; and, the court being of the opinion that the cause should not be delayed by reason of the filing of said answers, the cause was brought on to be heard upon the reports of Commissioner Baker, and the several exceptions indorsed thereon by defendants Lukins, Kerens, and Bennett, the said answers, and general replication thereto. The court overruled the said seven exceptions, and confirmed the reports, and proceeded to decree that: "there

is a liability upon the defendant C. Ed. Lukins for the sum of two thousand one hundred and twenty-five dollars and eighty-two cents, with interest from the 2d day of May, 1898, but subject to a credit of one thousand and thirty-nine dollars and sixty-five cents as of May, 10, 1898, and upon the defendant A. J. Bennett, one thousand and sixty-six dollars and seventy-eight cents, with interest from May 2, 1898, subject to a credit of six hundred and twenty-two dollars and twenty-eight cents as of May 10, 1898, and upon the defendant Columbus Kerens, two hundred and sixty-eight dollars and seventy-five cents, with interest from the 2d day of May, 1898, subject to a credit of one hundred and seven dollars and nine cents, as of May 10, 1898, which sums, subject to the credits aforesaid, are the amounts for which they are liable on account of the property purchased by them of the defendant A. H. Summerfield, and the said credits are the pro rata share of the proceeds of the sales of the property made by the defendant A. H. Summerfield, and to which credits the said Lukins, Bennett, and Kerens are entitled. It is therefore adjudged, ordered, and decreed that, after the credits aforesaid, the said Bennett, Lukins, and Kerens do pay the said sums of money, respectively, to J. F. Strader, special commissioner, who is hereby appointed for the purpose of collecting the same, and paying it upon the debts hereinafter provided for, without priority as to each other," etc., and providing that said commissioner might sue out executions therefor, and that said Lukins, Bennett, and Kerens do pay the plaintiff his costs of said suit.

The answers just referred to as filed raised the same questions raised by the exceptions to Commissioner Baker's reports. That of defendant Lukins, relying upon the denials and allegations of his former answer says, that, even in the case of the insolvency of said Summerfield at the date of the deeds to respondent, he is entitled to the following priorities in favor of himself out of the one thousand nine hundred and seventy-two dollars, the purchase price of the real estate purchased by him over the plaintiff and other creditors of said Summerfield, to wit: One note for six hundred and thirty-eight dollars and forty-five cents, with interest from May 23, 1896, which was secured

by trust deed dated June 16, 1896, on the same real estate purchased by him, which deed of trust is made a part of the cross bill and answer; also the sum of three hundred and sixty-three dollars and fifty-five cents, the amount of cash paid in hand by him to Summerfield at the date of the sale as part payment of the purchase money therefor, which was paid on a bona fide debt contracted by him to Summerfield at the time the conveyance was made; that in such case of insolvency no pro rata distribution in favor of the creditors of Summerfield can be made until a sale shall have been made of the real estate conveyed by said Summerfield thereafter; and avers that the sum of eight hundred dollars allowed to his co-defendant Heltzel against Summerfield by the reports of Commissioner Baker is unsupported by adequate proof or pleadings, is without legal foundation or bona fide consideration, and denies the valid existence of any such claim, and calls upon Heltzel to file his proper answer in the cause in his own behalf, so as to inform respondent of the date, amount, and true character of said claim, or any other claim of indebtedness he may choose to set up against Summerfield in the cause; that said Heltzel having purchased said land with the full knowledge of the alleged insolvency of Summerfield, he should be held to the specific performance of his contract to the amount of the purchase price, and the same should be held as a set-off against the debt in his favor claimed by him; and alleges that paintiff is not entitled to a confirmation of the sale of the real estate purchased by respondent, but, in case of the insolvency of Summerfield it should be sold, and the proceeds of sale accounted for, and applied to the payment of Summerfield's indebtedness in the manner prescribed by law; that Summerfield left this state before Heltzel's deposition was taken in the cause, without any knowledge, as far as respondent was advised, of the existence of any such claim, and has failed to return, and make the necessary defense against it, greatly to the prejudice of respondent; and prays that Heltzel, plaintiff, Carr, and the other creditors be made parties defendant to his answer and cross bill, and required to answer same, etc., and for general relief. Defendant A. J. Bennett's answer and cross bill is to the same effect, and alleges that the assign-

ment and transfer of the order to him by Summerfield on William Whitmer & Sons, for the sum of five hundred and eighty-five dollars and sixty-eight cents, even in case of the insolvency of Summerfield, is not affected by such insolvency, for the reason that it was an evidence ot debt made in part payment of a bona fide debt then due and payable from Summerfield to him, and denies the right of plaintiff, Carr, or other creditors of Summerfield, to recover, pro rata or otherwise, on account of said transfer or assignment, and closes with a prayer similar to that of Lukins.

From said several decrees the defendants C. Ed. Lukins and A. J. Bennett appealed to this court, and assigned seven errors. The first is that Commissioner Baker found that defendant A. H. Summerfield was insolvent on the 1st day of January, 1897, which finding was confirmed by the decree of February 1, 1898, while appellants claim that the evidence returned by the commissioner was so indefinite and inadequate as clearly to fail to warrant the finding. Summerfield became involved, and in 1896 executed several deeds of trust on parts of his real estate, and in the last of that year began to be sued; J. M. Harper recovering a judgment in January, 1897, for over three hundred dollars, an execution issued on which was returned "No property found" before the bringing of this suit. He began in January to dispose of his property to his creditors on account of their debts, and in a very short time had disposed of all of it. The first so conveyed was that to defendant Lukins by two deeds of date January 11th and acknowledged on the 19th of the same month. He sold and transferred to defendant Kerens his lumber to a greater amount than he owed him, requesting him to pay the excess after paying himself to other creditors. And to another creditor, the defendant A. J. Bennett, he gave an order on a firm who owed him for lumber in the sum of five hundred and eighty-five dollars and sixty-eight cents, and sold him stock sufficient to pay him the residue of what he owed him (in all, the sum of nine hundred and eighty-nine dollars and sixty cents), and sold and transferred personal property to his relatives, John W. Teter and wife, and conveyed real estate to John W. Heltzel, the price of which was to apply on a debt to himself after paying the Hannah Arbogast and

J. M. Harper judgments, which were liens thereon, or, as claimed in Summerfield's, answer, after paying said judgments he was to pay the notes sued on by plaintiff· It is true, the evidence is not clear as to the dates of the creation of some of the debts of Summerfield, but the circumstances very clearly show that they existed at the time he began disposing of his property in January, 1897. There is no evidence that he contracted a single debt after that time, and he seems to have wound up his estate in about as short a time as a business of that kind could have been "closed out." The record shows that Summerfield's assets will not pay over seventy-five per cent. of his debts, and should it turn out that the Heltzel debt of eight hundred dollars should on proper investigation be greatly reduced, or even wholly disallowed, still the assets will lack a considerable percentage of paying out. During the time he was disposing of his property, Summerfield told several persons that he was "broke up," and could not pay his debts. "A person is insolvent, within the meaning of section 2, chapter 74, Code, when all his property is not sufficent to pay all his debts." *Wolf* v. *McGuigin*, 37 W. Va. 552, (16 S. E. 797).

Second assignment: "That the commissioner's report, confirmed by decree of February 1st, allows a debt due from A. H. Summerfield to John W. Heltzel in the sum of eight hundred dollars, which is inadequately proved, although appellants excepted to said report on this ground, and called for such proof of the claim as would enable them to defend against it." It seems to me that the exception to this claim as not being adequately proven is well taken. There is no account or statement of any kind showing the nature or character of the claim, except what appears in the testimony of John W. Heltzel; and he fails to give any dates, and very little of the particulars about the claim. In his deposition taken August 25, 1897, he says, "Mr. Summerfield was in debt to me about eight hundred dollars;" and on being recalled by the commissioner on the 18th of April, 1898, he is asked the question: "State what amount of money was due you on the 1st of January, 1897, from A. H. Summerfield, and for what was the same due. Ans. He was due me eight hundred dollars for lumber

purchased of me, and for sawing the same. He purchased from me about two hundred and fourteen thousand feet of logs on the skidway, and I was to saw the same, for which logs and sawing I was to receive the sum of nine dollars and twenty-five cents per thousand feet, and he has paid me one thousand and fifty dollars; and there is some lumber, from which I will I think receive enough to reduce this claim to eight hundred dollars, or at least it is understood that I am to get it. All of the eight hundred dollars still remains unpaid." This answer clearly reveals the fact that he had with Summerfield an executory contract. The money for the lumber was only to become due to him when he had performed his contract, in sawing the logs into lumber. This was his duty under the contract, and he does not show by his own testimony, even, that he did the work or had so fulfilled his part of the contract as to entitle him to the money claimed. Heltzel is made a party defendant to the plaintiff's bill by reason of his taking from Summerfield a conveyance of the one hundred and fourteen acres and one-sixth of three hundred and twenty-five acres of land, which plaintiff seeks to have set aside as fraudulently giving preference to certain creditors over others. Heltzel fails to answer the bill and set up his claim, if any he had, while Summerfield filed an answer under oath averring that Summerfield conveyed to Heltzel the one hundred and fourteen acres and the one-sixth of three hundred and twenty-five acres in February, 1897, and that in consideration thereof Heltzel agreed to pay the notes held by plaintiff and release respondent from any liability thereon, and also to pay off the judgment of J. M. Harper, and averring that the said real estate so conveyed was amply worth the aggregate amount of said debts, with the accrued interest and costs. This allegation in the answer of Summerfield is corroborated by the testimony of D. S. Cunningham, taken in the cause, who wrote the deed from Summerfield to Heltzel conveying said one hundred and fourteen acres and one-sixth of three hundred and twenty-five acres. Cunningham says, referring to conversation between Heltzel and Summerfield: "Ans. The first conversation that took place in my presence was that John W. Heltzel was to pay one thousand dollars to Summerfield for

a certain tract of land,—this same tract of land. He was to pay N. J. Carr the amount that Summerfield was due Carr, and Summerfield the remainder. The second conversation, they told me to write the consideration in the deed, five hundred dollars. Heltzel said that they had then ascertained that Jode M. Harper had a judgment of three hundred and some dollars against Summerfield, which would have to be paid. He said they would make the consideration five hundred, instead of a thousand, now. Heltzel claimed that, if they would make the consideration a thousand dollars, that he would probably have to pay Summerfield the difference between N. J. Carr's debt and the thousand dollars, and he felt satisfied that Jode M. Harper's debt would have to be paid out of this amount. After the payment of Carr's debt and Harper's debt, if there was a balance back, Heltzel was to pay this to Summerfield." He further states that the deed was dated February 22, 1897, and that Heltzel then agreed with Summerfield to pay the N. J. Carr debt out of the proceeds, or rather out of the consideration given for said land. It is contended by appellant that the answer of Summerfield, being under oath, becomes evidence, and he cites *Johnson* v. *Riley*, 41 W. Va. 140, 145, (23 S. E. 698), in support of his contention. It is there said in the opinion of the court: "It is also settled that when the plaintiff requires the defendant to file his answer under oath the answer will be taken as true, unless contradicted by competent evidence. * * * By his appeal to the defendant's conscience he attributed to him credibility, and made a witness of him." In case at bar, however, the plaintiff's bill was not sworn to. Hence, the answer was not required to be sworn to; and under the statute no additional weight is given to it by reason of its being sworn to, in any event. *Code*, c. 125, s. 38; *Rogers* v. *Verlander*, 20 W. Va. 619. Yet it is a fact stated in the sworn answer of Summerfield that Heltzel agreed, as a part of the consideration for the land conveyed to him, that he would pay the Carr notes, which answer was made and filed in May, 1897; and, although Heltzel did not answer the bill, his deposition was taken in the cause on the 25th of August, 1897, and he did not then deny the fact stated by Summerfield. On September 14, 1897, D. S.

Cunningham's deposition was taken, and he stated as above set forth in his "Ans. 3." On the 18th of April, 1898, Heltzel's deposition was again taken, and he failed to deny the fact or make any explanation. Here there is the undisputed fact that Heltzel agreed with Summerfield in February, 1897, to pay the Carr notes in part consideration of the two tracts of land conveyed to him, and yet in his deposition he states that Summerfield owed him on the 1st of January, 1897, the sum of eight hundred dollars. Columbus Kerens states in his deposition taken on the 25th of August, 1897, that, maybe a month after he bought the lumber from Summerfield, he (Summerfield) told him that, if there was anything over what they agreed on the lumber, he wanted him to pay it to John Heltzel on the debt Summerfield owed him; that Heltzel was likely to have to pay some money on Summerfield's official bond, and Summerfield said he would like to have N. J. Carr paid fifteen dollars and seven cents, if there was enough over their contract to pay him. The record shows that Summerfield owed Carr a small account, of something over fifteen dollars, aside from the notes Heltzel was to pay. Is it at all probable that Heltzel would agree to pay for Summerfield to Carr the two notes, of nearly four hundred dollars, when Summerfield was then due him individually on account more than twice that sum? The record shows that Summerfield had left the state before the first deposition of Heltzel was taken, and could not be present to answer the claim set up by Heltzel in his deposition.

The third assignment is by appellant Lukins,—that the court erred in confirming to him, against his protest, the sale of the two tracts of land, and decreeing against him for the appraised value, instead of reselling the property. The first part of this assignment is not sustained by the record which does not show a protest by the appellant against the confirmation of the sale, but at the time of the making of said decree confirming the sale to him on February 1, 1898, the case stood upon his answer denying the right of plaintiff to have the sale set aside. The cause, it appears, came on to be heard, among other things, "upon the demurrer of A. H. Summerfield, Chas. Ed. Lukins, A. J. Bennett, and Columbus Kerens to plaintiff's bill, and

upon the cross bills of the same parties who demurred, and was argued by counsel. Upon consideration thereof, it is adjudged, ordered, and decreed that the said several exceptions and the demurrer to plaintiff's bill be overruled, and the cross bills be rejected; and, the defendants having answered heretofore, the right to answer further is waived for this term." The decree then proceeds to confirm the sales to Lukins, Bennett, and Kerens, and to set aside the sale to Heltzel, and provide for the sale of the property which had been sold to Heltzel. There is nothing in the record to show the nature of the cross bills rejected on the 1st day of February. This waiver to further answer for the term was an acquiescence in the decree confirming the sales. There is no protest, in any shape or form, against the confirmation until it is found in the cross bill filed by him the 14th of May, but which is stated to have been filed before Commissioner Baker on the 28th of March, 1898, nearly two months after the confirmation of the sale. There could be no object in setting aside the sales, and having a resale of the property, when all parties were satisfied with the adequacy of the process paid; and the sales having been confirmed without opposition, and after the declaration of the court of the insolvency of the debtor prior to the said sales, it is too late for the purchaser to object to the confirmation. On this point, however, the majority of the court disagree with my views, and hold that appellant did not acquiesce in the confirmation of the sale because of his waiver of right to further answer at that term, but that he still has a right to object to confirmation, and that the sale should be set aside, and the property resold for the benefit of all the creditors, and that the court erred in confirming the sale before reference to a commissioner to ascertain liens. The principal complaint or cause of this assignment is that the court confirmed the sale to appellant, and decreed against him for the appraised value of the property, without giving him his proper preferences. The latter part of this assignment is covered by the fourth and fifth; the former being that the court erred in "that, while it appears uncontroverted in the evidence that he paid said Summerfield the sum of three hundred and twenty-one dollars and seventy-

five cents in cash as part payment for the land sold to him, the decrees complained of do not give him the priority given by law for the purchase money, paid cash in good faith, but simply treats this sum as a general debt due from Summerfield to him, for which he is entitled, with other creditors, to a pro rata distribution out of the estate of said Summerfield." One proviso in section 2, chapter 74, Code, amended by chapter 5, Acts 1895, is "that nothing in this section shall be taken to prevent the making of a preference as a security for the payment of purchase money or a *bona fide* loan of money, or other *bona fide* debt contracted at the time such transfer or charge was made, or as security for one who at the time of such transfer or charge becomes an indorser or surety for the payment of money then borrowed." Appellant Lukins insists that having purchased the real estate in good faith for full value, and without knowledge or suspicion, even, of the insolvency of his debtor and grantor, in addition to his own debts, secured and unsecured, he paid in cash three hundred and twenty-one dollars and seventy-five cents, which amount ought to be secured to him as purchase money or a *bona fide* debt contracted at the time such transfer was made under said proviso. It cannot be such "purchase money" as is contemplated in said clause that may be secured with preference. That evidently means the purchase money due from the insolvent to his grantor or vendor as purchaser of the property so transfered. Was it in any sense a loan of money, or a debt contracted at the time of the transfer, to bring it within the provision of the making of a preference as security for the payment of a *bona fide* loan of money or other *bona fide* debt contracted at the time of the transfer? There was a sale by the insolvent to the appellant, made in perfect good faith on the part of the purchaser; and after applying the debts due from the grantor there was a balance of three hundred and twenty-one dollars and seventy-five cents, which was paid to the grantor in cash, as the residue of the purchase money of the land. It is not contended that the insolvent could not sell and convey his property to a *bona fide* purchaser notwithstanding his insolvency. There is something of an effort in the

brief of appellees to show, by arguing from circumstances, that Lukins knew of the insolvency of Summerfield when he took the conveyance, and joined with him in his fraudulent efforts to hinder and delay his creditors; but it is emphatically denied by Lukins, both in his answer and his testimony, and there is nothing contained in the record to overcome it.   Lukins lived in another county from that of Summerfield, and there is nothing to show that he was at all familiar with his affairs.   The purpose of section 2, chapter 74, Code, is to prevent preferences by an insolvent debtor among his creditors, and it provides that: "Every transfer or charge made by an insolvent debtor attempting to prefer any creditor of such insolvent debtor or to secure such a creditor or any surety or endorser for a debt to the exclusion or prejudice of any other creditor, shall be void as to such preference or security, but shall be taken to be for the benefit of all creditors of such debtor.   And all the property so attempted to be transferred or charged shall be applied and paid *pro rata* upon all the debts owed by such debtor at the time such transfer or charge is made."   The cash consideration paid by Lukins (the three hundred and twenty-one dollars and seventy five cents) became and was a *bona fide* debt due from Summerfield to Lukins, contracted at the time the transfer was made, whenever it was ascertained that Summerfield was insolvent before and at the time of the transfer, and should be treated as a prefered debt under said section 2.

Fifth assignment:   That the court erred in not recognizing the priority of appellant Lukins' prior deed of trust for six hundred and thirty-eight dollars and forty-five cents on the ninety-nine-acre tract of land included in the transfer.   The deed from Summerfield to Lukins, being dated January 11,1897, which was avoided as an illegal preference, included a tract of ninety-nine acres, on which Lukins had a deed of trust, executed by Summerfield, bearing date June 16, 1896, securing to him the payment of the sum of six hundred and thirty-eight dollars and forty-five cents with interest from May 3, 1896, which was duly acknowledged and recorded, the amount of which, together with two other notes made to Lukins by Summerfield, and the three hundred and twenty-one dollars and seventy-five

cents in cash, made one thousand nine hundred and seventy-two dollars, the amount of the consideration paid by Lukins for the transfer. No question has been raised in the cause as to the validity of the deed of trust, or the two other notes which entered into and made part of the consideration. It is contended by appellee that when Lukins accepted the transfer "he gave up by his purchase his specific lien, and received his pay in land, and surrendered the lien, and took his chances with other creditors of Summerfield to be paid *pro rato*, if the other creditors, or any of them should complain in a court of equity within the short time allowed by the statute," and insist that he has no other rights than to come in with other creditors of Summerfield, and have his debts existing at the time of the purchase paid *pro rata* with the other creditors. In *Avery* v. *Hackley*, 20 Wall. 407, (22 L. Ed. 385,) it is held that a " valid lien is not devested by the mere fact of the holder of it subsequently taking a transfer of the equity of redemption made to him with a view of giving to him a preference, and in violation of the bankrupt act." See, also, *Johnson* v. *Riley*, 41 W. Va. 140, (23 S. E. 698).

Sixth assignment is by A. J. Bennett,—that it was error to invalidate, as an illegal preference, the assignment from A. H. Summerfield to him of an order for five hundred and eighty-five dollars and sixty-eight cents on William Whitmer & Sons, in part payment of a *bona fide* debt then due from Summerfield to Bennett, which order was for money due from William Whitmer & Sons to Summerfield for lumber sold them; that said Bennett acted in good faith, without knowledge of any insolvency on the part of Summerfield, and wholly without intent to hinder, delay, or defraud any creditor of said Summerfield. Defendant Summerfield was indebted to Bennett in the sum of nine hundred and eighty-nine dollars and sixty-eight cents. This amount was paid to Bennett by the said order on Whitmer & Sons, and the transfer of stock and other personal property aggregating said amount of nine hundred and eighty-nine dollars and sixty-eight cents. The court set aside the preference given to Bennett as illegal, as to his whole claim, and placed the same on a footing with all simple-contract creditors, to be paid *pro rata* and decreed against

Bennett, to be paid to all the creditors the said sum of nine hundred and eighty-nine dollars and sixty-eight cents. notwithstanding the last provision of section 2, chapter 74, Code, as amended by the Acts of 1895, which reads: "Provided, further, that nothing in this section contained shall be taken to effect any transfer of bonds, notes, stocks, securities or other evidences of debt in payment of or as collateral security for the payment of a *bona fide* debt or to secure any endorser or surety, whether such transfer is made at the time such debt is contracted or endorsements made, or for the payment or security of a pre-existing debt." The *bona fides* of the claim of Bennett is not questioned in the cause. It is claimed by the appellee that the order given by Summerfield to Bennett was not such a transfer of notes, bonds, stocks, securities, or other evidences of debt in payment of, or as collateral security for the payment of, a bona fide debt, as is protected by said provision. The form of the order is not given in this case, but the presumption is that it was an order in writing for the payment of the amount of money mentioned in the order. It is reported by Commissioner Baker, and referred to as "one order on Whitmer & Sons, five hundred and eighty-five dollars and sixty-eight cents;" and Summerfield, in his answer, says "that his sale of the personal property mentioned to A. .J. Bennett, and the assignment of the order of five hundred and eighty-five dollars and sixty-eight cents to Wm. Whitmer & Sons, was made in good faith, and for valuable consideration, to-wit, the payment of the sum of nine hundred and eighty-nine dollars and sixty-eight cents in the aggregate, which respondent then justly owed said Bennett," etc.; and Bennett, in his answer, says: "In payment in full of which amount (nine hundred and eighty-nine dollars and sixty-eight cents) the said A. J. Bennett received from said A. H. Summerfield as follows: Order on William Whitmer & Sons for five hundred and eighty-five dollars and sixty-eight cents; one lot of about fifty thousand feet of mostly mill culls and cull white-oak boards," etc. 17 Am. & Eng. Enc. Law, 224, defines an order as "a brief note, resembling a single bill of exchange, requesting the payment of money or the delivery

of personalty to the bearer of the note. * * * There is a prima facie presumption that there was a valuable consideration for drawing an order." And it is there further said that "an order drawn upon sufficient consideration cannot be revoked, whether accepted or not," and in the absence of an acceptance is such an evidence of debt that an action will lie thereon against the drawer, and after acceptance by the drawee an action will lie against him. *Child* v. *Moore*, 6 N. H. 33; *Jolliff* v. *Higgins*, 6 Munf. 3; *Curle* v. *Beers*, 3 *J. J. Marsh*, 170. An account is assignable, and under section 14, chapter 99, Code, the assignee can maintain any action thereon in his own name, without the addition of "Assignee," which the original payee might have brought. It was evidently the purpose of the lawmakers to permit the transfer and assignment of debts or indebtedness in any shape that it could be assigned in payment of, or as collateral security for the payment of, a *bona fide*, debt, etc. The evidence is that the order made by Summerfield on William Whitmer & Sons was taken, together with the other property transferred at the same time, in full payment of Summerfield's indebtedness to Bennett. An assignment of an account or an order to one who owes the account, to pay the amount due to the drawer, or any specific part of it, to the payee in the order, is such a transfer of an evidence of debt as will be protected by the last proviso in section 2, chapter 74, Code.

Seventh: Appellants "join in assigning as error the decree of February 1, 1898, in that it sets aside a sale made by Summerfield to J. W. Heltzel, and the resale of the property conveyed, at a less price, and at the cost of the insolvent estate, although Heltzel fully admits that he knew of the insolvency of Summerfield at the time of the purchase. Sales made by Summerfield to others who were innocent purchasers were, on the other hand, confirmed to them against their protest." The bill of plaintiff prayed for the setting aside of the deed to Heltzel, and that the property be sold, and the proceeds applied to the several creditors of the defendant A. H. Summerfield *pro rata*. Defendant Heltzel failed to answer or put in an appearance. The bill was taken for confessed as to him, and on the 1st day of February the decree was rendered setting aside the sale

to Heltzel, and the deed conveying to him the one hundred and fourteen acres and the one-sixth of three hundred and twenty-five acres of land, and providing for the sale of said land for the benefit of all the creditors. It is true, it sold at the sale under the decree for less than the price for which Summerfield had sold it to Heltzel. But the creditors having stood by and permitted the decree to be entered by default, and then continued to stand by and permit it to be sold for about one-half the price Heltzel was to pay for it, without taking any steps to prevent it, it seems to me they are hardly in position to complain of the error of the court. True, appellants Lukins and Bennett did, together with defendant Kerens, at the May term, 1898, of the court, file an exception to the report of Commissioner Baker, filed at the same term, because the reports of said commissioner failed to charge said Heltzel with the specific execution of his contract in the purchase of the one hundred and fourteen acres and the one-sixth of three hundred and twenty-five acres of land. The reports seem to be responsive to the decrees referring the cause to him. He reports the fact of the said sale of the land to Heltzel, but it nowhere appears that he was required by any party in interest to make any specific report in regard to it, no question having been raised before him. The sale to Heltzel was set aside and a decree for a resale rendered on February 1st, 1898, and the judicial sale was begun on the 2d day of May, —the day fixed in the advertisement,—and for want of bidders was adjourned to May 6th, when it was sold at public auction, and the sale confirmed at the same term. No objection was made to the sale or its confirmation. But the exception to the report of Commissioner Baker was indorsed some time during that term in May,—exact date not given. The creditors had the benefit of a public sale of the property to apply to their debts, and it could not be known very well until the sale was made whether it was better for the creditors to set aside the sale to Heltzel and resell the property, or to have held the sale to Heltzel valid.

For the reasons herein stated, the decree of February 1st, 1898, in so far as it overrules the demurrer to plaintiff's bill, and decides the defendant A. Summerfield to be

insolvent as early as the first of January, 1897, and sets aside the sale to Heltzel, and confirms the sales to Kerens and Bennett, and decrees the sale of the one hundred and fourteen acres and one-sixth undivided interest in the three hundred and twenty-five-acre tract, and the decree of May 7th in so far as it confirms the sale of the one hundred and fourteen acres and the one-sixth of the three hundred and twenty-five acres to J. M. Harper, are confirmed, and in all other respects the same are reversed and set aside; and the decree of May 14th, 1898, is reversed and set aside, and the cause remanded for further proceedings to be had therein.

*Modified.*